The document below is hereby signed.

Signed: June 15, 2011



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| W.A.R. LLP, | ) | Case No. 11-00044 |
| | ) | (Chapter 7) |
| Debtor. | ) | |

MEMORANDUM DECISION RE RAY CONNOLLY'S MOTION FOR ORDER OF
CIVIL CONTEMPT AND FOR SANCTIONS FOR VIOLATING BANKRUPTCY STAY

This addresses the Motion for Order of Civil Contempt and for Sanctions for Violating Bankruptcy Stay (Dkt. No. 115) filed by Ray Connolly against William C. Cartinhour, Jr., and his attorneys, Patrick Kearney, Michael Bramnick, and Robert Stanley Selzer.[1]  Connolly alleges that Cartinhour and his attorneys violated the automatic stay of 11 U.S.C. § 362(a) by reason of the continued prosecution, after this bankruptcy case commenced in November 2010, of Cartinhour's counterclaims in *Robertson v. Cartinhour*, Civil Action No. 09-01642 in the United States District Court for the District of Columbia.  For this violation,

---

[1]  Connolly filed an Omnibus Memorandum in support of this and other motions he is pursuing.

Connolly seeks civil contempt sanctions, and seeks pursuant to 11 U.S.C. § 362(k)(1) a recovery of money damages, including attorney's fees and punitive damages.  The motion is frivolous and will be denied.  The automatic stay did not bar the acts Cartinhour and his attorneys undertook after the commencement of this bankruptcy case, and, in any event, Cartinhour obtained relief from the automatic stay to pursue his claims.

I

In 2009, Wade Robertson sued William C. Cartinhour, Jr. in the United States District Court for the District of Columbia, *Robertson v. Cartinhour*, Civil Action No. 09-01642, for a declaratory judgment regarding certain agreements Robertson had entered into with Cartinhour relating to a partnership, W.A.R., LLP, which is the debtor in this bankruptcy case.  Cartinhour pursued various counterclaims.

A.

<u>Cartinhour's Equitable Trust Claim</u>

In his Amended Counter-Complaint (D. Ct. Dkt. No. 61) Cartinhour asserted that Robertson committed fraud or negligent misrepresentation and breached his fiduciary duties to Cartinhour and committed legal malpractice by taking from Cartinhour $3.5 million in capital contributions for W.A.R., LLP.  Cartinhour's Amended Counter-Complaint included a Count XI (Equitable Trust) which, after pleading Robertson's wrongful acts against

2

Cartinhour, stated:

> 104. As a matter of equity, all assets traceable to the capital contributions of Cartinhour, including but not limited to bank accounts, brokerage accounts, stocks, bonds, real estate and personal property should be subject to a constructive trust in favor of Cartinhour.
> WHEREFORE, the premises considered, the Defendant/Counter-Plaintiff, William C. Cartinhour, Jr., requests that the Court impose a constructive trust upon all such assets traceable to the $3,500,000 taken by Robertson in favor of Cartinhour, and such other and further relief as the nature of this case may require and to which this Court shall appear just and proper.

Most of the funds that Cartinhour sought to reach by this request for a constructive trust had become Robertson's property. Pursuant to preliminary orders in the district court, various funds were placed in the registry of the district court awaiting the outcome of the equitable trust claim. Cartinhour and his attorneys represent in their opposition to Connolly's motion, and Connolly has not disputed in his reply, that the only funds placed in the registry of the district court that came from an account in the name of the debtor was the $4,611.66 in funds held in the debtor's Citibank account deposited in the registry of the

district court on April 2, 2010.[2] That deposit occurred well before the commencement of this bankruptcy case in November 2010. As will be seen, Cartinhour and his attorneys have consistently not pursued Cartinhour's claims against that $4,611.66 since the commencement of the bankruptcy case.

To explain in more detail, the source of the funds placed in the registry of the district court can be traced as follows. Robertson had caused the partnership to lend him $3,405,000 pursuant to Article XXIII of the W.A.R., LLP partnership

---

[2] The debtor's general partner, Robertson, through counsel, conceded at a hearing of November 19, 2010, in the district court that all but approximately $4,000 of the funds held in the registry of the district court were funds that had been held in accounts of Robertson, not in accounts of the debtor. Specifically, the following colloquy ensued at a November 19, 2010 hearing:

> [THE COURT:] Where are all the assets that were frozen now? Are they only in the Court registry or are some of them frozen in accounts someplace?
> MR. GRIFFIN: I believe of [sic] they're all in the Court registry, Your Honor.
> MR. KEARNEY: That is correct.
> THE COURT: So, it is close to 700,000 that is sitting in the Court registry. Most of that, with the exception of 4,000, came out of accounts in his personal name; is that correct?
> MR. GRIFFIN: That is correct, Your Honor.
> MR. KEARNEY: Yes, Your Honor.

Tr. (D. Ct. Dkt. No. 182) at 6.

4

agreements,[3] as borne out by an accounting Robertson filed in the civil action.[4]

    Specifically, before this bankruptcy case commenced, the

---

[3] The debtor has acknowledged that:

> The Partnership Agreements explicitly agreed to the issuance of loans from the partnership to the partners. . . . Two such loans are currently outstanding, each issued as promissory notes to Robertson--one issued on April 8, 2005 for $1.970 million and the other issued on April 18, 2007 for $1.435 million.

See *W.A.R. LLP v. Cartinhour*, Adversary Proceeding No. 11-10004 (Bankr. D.D.C.), Complaint (Dkt. No. 2) ¶¶ 11-12. The final partnership agreement is Exhibit 2 to Robertson's affidavit filed as part of Dkt. No. 30 in the civil action.

[4] In their joint pretrial statement in the civil action (Dkt. No. 121), the parties stipulated that:

> Wade A. Robertson borrowed $1,970,000 from W.A.R., LLP on April 8, 2005, as evidenced by the promissory note at Defendant's Exhibit 19. That money was deposited into Wade A. Robertson's personal brokerage account at Charles A. Schwab & Sons, Inc.
>
> Between April 26, 2005 and August 30, 2005, Wade A. Robertson transferred $224,184.52 from his Charles A. Schwab & Sons, Inc. personal brokerage account to his personal Citibank account, leaving a balance of $10.56 in that account as of August 31, 2005. The balance of the money not withdrawn, approximately $1,746,000, was lost in unsuccessful securities trading by Wade A. Roberson in his personal brokerage account[.]
>
> . . .
>
> Wade A. Robertson borrowed $1,435,000 from W.A.R., LLP on April 18, 2007 pursuant to the promissory note at Defendant's Exhibit 54. That money was deposited into Wade A. Robertson's personal brokerage account at Charles A. Schwab & Sons, Inc. Approximately $1,068,065, was lost in unsuccessful securities trading by Wade A. Roberson in his personal brokerage account.

5

district court directed Robertson to file an accounting regarding the partnership (D. Ct. Dkt. No. 18). On January 4, 2010, Robertson filed an affidavit (D. Ct. Dkt. No. 25), which included an Exhibit B, which set forth the partnership's assets as:

```
ASSETS:
Cash                                              $4,541.44
Receivables
    -(Article XXIII , WAR. Partn. Agreemt)    $3,405,000.00
Accounts Receivable
    (Contingency class claims- Expenses)        $213,111.13
Accounts Receivable
    (Contingency Class claims- Prof. Srvcs)   $3,833,440.00
Total Assets:                                 $7,456,092.57
```

Pursuant to his Equitable Trust claim, Cartinhour sought and obtained orders in March and April 2010, before the filing of the petition in this case, which resulted in various funds, traceable to Cartinhour's $3.5 million in capital contributions, and that were owned or controlled by Robertson, being placed in the registry of the district court to be held *in custodia legis*:

- Two of the deposits, in the amounts of $20,713.75 and $5,000, were of moneys held by law firms representing Robertson, and were made pursuant to a consent order

Case 11-00044    Doc 164    Filed 06/15/11    Entered 06/15/11 15:59:58    Desc Main
         Document - Motion for Contempt    Page 7 of 20

      entered on March 1, 2010.[5]

- The remaining deposits were made pursuant to a preliminary injunction entered on March 26, 2010,[6] and consisted of deposits on April 2, 2010, of $600,074.92 from Robertson's Schwab account and $4,611.66 deposited by Citibank from the debtor's Citibank account or accounts.

---

[5] The consent order directed that, among other things, it was:

> ORDERED, that any monies held directly or indirectly by Edward Griffin, Esquire, or any other attorney or expert retained by Wade A. Robertson on behalf of Wade A. Robertson in this matter, and with respect to the Bar Counsel Complaints/Investigation, and any criminal proceeding in connection with this matter, shall be surrendered for deposit into the Registry of the Court within five (5) days of the date of this Order[.]

D. Ct. Dkt. No. 70. On March 9, 2010, pursuant to that order, Griffin Whitaker, LLC deposited $20,713.75 and Sutherland Asbill & Brennan LLP deposited $5,000.00 into the registry of the district court. (See D. Ct. Dkt. Entries preceding Dkt. No. 75.)

[6] The district court's order directed that it was:

> ORDERED, that all monies held the Charles A. Schwab & Sons, Inc. brokerage account of Wade A. Robertson (xxx-0772) . . . and all Citibank accounts in the name of W.A.R., LLP and any account of Wade Robertson subject to this Court's Consent Preliminary Injunction entered on March 1, 2010 is not to be withdrawn, moved, transferred, concealed, spent or otherwise dissipated, EXCEPT THAT Schwab and Citibank shall transfer the funds held in those accounts to the Clerk of the United States District Court for the District of Columbia for deposit into the Registry of the Court forthwith and those funds are henceforth held in *custodia legis*, regardless of their current location[.]

B.

<u>Cartinhour's Other Claims</u>

The Amended Counter-Complaint asserted legal claims against Robertson, and in addition to asserting the Equitable Trust claim, asserted counts for Accounting (Count I), Derivative Action (Count VIII), Rescission (Count IX), Dissolution and Appointment of Receiver (Count X), and Declaratory Judgment (Count XII) (seeking to declare the agreements between Cartinhour and Robertson unenforceable).  In the joint pretrial statement filed in the civil action on November 5, 2010 (Dkt. No. 121), Cartinhour elected not to pursue the claims for an Accounting (Count I) and Derivative Action (Count VIII).

C.

<u>The Bankruptcy Case and Rulings Re the Automatic Stay</u>

On November 15, 2010, Douglas Sims filed an involuntary petition commencing this case against W.A.R., LLP in the United States Bankruptcy Court for the Western District of Tennessee.  The case was later transferred to this district.

On November 17, 2010, Robertson filed in the civil action a Suggestion of Bankruptcy, contending that:

> Dr. Cartinhour seeks to rescind the Partnership Agreements which form the very basis of the Debtor's existence.  To dissolve the Debtor by way of rescission or receivership would appear to "exert control over the property of the estate," and to the extent that any claims in the instant action do so, they are stayed by the Tennessee bankruptcy action.

On November 18, 2010, Cartinhour, through Kearney, filed a reply to the suggestion of bankruptcy, in which he made clear that he was electing not to pursue his claim for appointment of a receiver, and not to pursue the $4,611.66 that came from the account of the debtor at Citibank. That reply (D. Ct. Dkt. No. 130) stated:

> The Amended Counter Complaint did assert derivative claims for W.A.R., LLP against Robertson, which would be subject to the automatic stay. But, those claims have been abandoned as of the filing of the pretrial statement. Cartinhour also seeks the appointment of a receiver against W.A.R., LLP if the agreements between the parties are not rescinded. That action cannot go forward while the automatic stay is in place. Cartinhour also seeks the imposition of a constructive trust over money that is directly traceable to funds which he invested. The bulk of those monies, the remainder of the $3,405,000 transferred to Robertson under a two promissory notes are no longer property of the Estate – the monies went into the dominion, exercise and control of Robertson as evidenced by the fact that they were transferred to his personal Charles A. Schwab and Sons, Inc. account and to his personal Citibank account. Instead, the estate of W.A.R., LLP is owed money under two promissory notes made by Robertson. Cartinhour does not seek to affect those notes.
> 	W.A.R., LLP had approximately $4,000 in a Citibank account which was subject to the injunction issued in this case. While it is Cartinhour's position that such funds are not property of the estate under 11 U.S.C. section 541 in that the money is held in trust for Cartinhour, the argument is too esoteric and expensive for such a small amount of money. Cartinhour will not seek the imposition of a constructive trust on money in the Registry of the Court that was transferred directly from the W.A.R., LLP Citibank account to the Registry of the Court while the automatic stay is in place.

Reply (D. Ct. Dkt. No. 130) at 2-3. Accordingly, the only claims by Cartinhour that he was continuing to pursue in the civil

9

action were the claims for monetary damages against Robertson, the claims for rescission, the claim for a declaratory judgment that the agreements between Robertson and Cartinhour were unenforceable, and the claim to enforce a constructive trust against funds that belonged to Robertson.

Nevertheless, the debtor contended that the automatic stay barred the continued pursuit of the civil action in its entirety. In the bankruptcy court in Tennessee, the debtor and Cartinhour both filed papers addressing the issue of the reach of the automatic stay. The debtor filed an adversary proceeding, *W.A.R. LLP v. Cartinhour* (a proceeding later transferred to this court and assigned Adversary Proceeding No. 10-10004), seeking to enjoin Cartinhour's pursuit of the civil action. Cartinhour filed a motion for relief from the automatic stay.

In its complaint in the adversary proceeding, the debtor acknowledged that:

> The Partnership Agreements explicitly agreed to the issuance of loans from the partnership to the partners. . . . Two such loans are currently outstanding, each issued as promissory notes to Robertson--one issued on April 8, 2005 for $1.970 million and the other issued on April 18, 2007 for $1.435 million.

Compl. ¶¶ 11-12. As a matter of law, the funds that the debtor concedes were lent to Robertson (rightly or wrongly) had become Robertson's, with the estate holding instead promissory notes obligating Robertson to repay those loans to the debtor. The complaint then alleged:

10

> 16. As the Partnership's accounting shows, the Partnership has both intangible and tangible assets. **The tangible assets comprising the property of the estate of the debtor Partnership include cash that had been held in bank accounts in the name of the Partnership as well as cash held by Mr. Robertson in his accounts pursuant the [sic] two outstanding promissory notes payable to the debtor Partnership** (as discussed above). All of these remaining tangible assets of the Partnership were enjoined and seized into the Registry of the United States District Court for the District of Columbia in a civil action upon a motion for a preliminary injunction by Dr. Cartinhour in March of 2010. (discussed below) More than $630,000 in cash was enjoined and attached into the Registry of the U.S. District Court for the District of Columbia.

[Emphasis added.] The allegation that the "cash held by Mr. Robertson in his accounts pursuant [to] two outstanding promissory notes payable to the debtor Partnership" is property of the estate is predicated on an erroneous view of the law. Such cash, having been lent to Robertson, became *his* property. In executing the debtor's Schedule B, Robertson repeated the erroneous statement by listing the $630,000 in its entirety as property of the estate. (Bankr. D.D.C. Dkt. No. 79.) That Schedule B does not establish that the $630,000 (aside from the $4,611.66 that was in the debtor's Citibank account) is property of the estate.

In an order entered on November 24, 2010, the Honorable Paulette J. Delk of the United States Bankruptcy Court for the Western District of Tennessee concluded that the automatic stay did not bar the continued litigation of the civil action against

Robertson, and additionally, out of an abundance of caution, granted relief from the automatic stay to permit the civil action to proceed. Specifically, Judge Delk ruled, and "SO ORDERED" that:

> Matters being tried in the D.C. lawsuit do not involve the debtor as a party and are not matters that have the potential for immediately affecting the debtor or property of the estate. The matters involve one partner in the debtor against another partner in the debtor. The status as general partner does not entitle one to protection under the automatic stay of the debtor-partnership. *Patton v. Bearden*, 8 F.3d 343 (6th cir. 1993), citing *In re Bank Center, Ltd*, 15 B.R. 64 (Bankr. W.D. Penn. 1981). The court finds that the automatic stay does not prevent the D.C. lawsuit from going forward, because neither the debtor nor property of the estate will be affected by the trial. **Judge Huvelle is aware of the bankruptcy case and stated on the record that any ruling in the D.C. lawsuit will not reach the remedy of dissolution which would have some impact on the debtor. Even if that issue were to be reach [sic], the bankruptcy estate would not be affected since the rights of creditors of the debtor have priority over the partners' right to the assets of the debtor.** *In re Cardinal Industries, Inc.*, **105 B.R. 834 (BANKR. S.D. Ohio 1989).**
>     **Out of an abundance of caution, the court expressly finds that sufficient cause exists under 11 U.S.C. § 362(d)(1) to modify the stay to permit the D.C. lawsuit to go forward.**

[Emphasis added.]

Meanwhile, back in the civil action, the Honorable Ellen M. Huvelle held a hearing on November 19, 2010, and reached the same conclusion that the automatic stay did not apply. Judge Huvelle ruled as follows:

> Robertson argues that the stay applies to Cartinhour's claims because Mr. Cartinhour is seeking to exercise

control over the partnership's estate by obtaining rescission of the partnership agreement and therefore dissolution of the partnership.

As I rule below, I find his legal arguments to be incorrect. . . .

[A]s [an] initial matter, **362 Section (a)(1) does not stay claims against Robertson because he is not the debtor. Rather, W.A.R. is the debtor and Robertson's status as a partner of the partnership does not entitle him to protections of the automatic stay.**

I'm citing Sixth Circuit law because that's what is applicable. Patton versus Bearden, 8 F.3d. 343, page 348, Sixth Circuit '93. Additionally, it is clear that Cartinhour's legal claims are not subject to the stay because these claims are against Robertson personally and not the partnership.

So, if [Cartinhour] were to prevail, monetary damages would be owed by Robertson individually while the partnership assets and therefore the alleged bankrupt estate would remain uneffected [sic].

**His claim for rescission of the business agreement, partnership agreements and amendments and the release is not effected [sic] by the stay, even if it were ultimately to result in a dissolution of the partnership.** Robertson argues that dissolution of the partnership would exert control over the property of the bankrupt estate in violation of (a)(3), but the Court does not agree with this legal argument. Partners' rights to income and distribution are subordinate to the rights of the partnership's creditors.

The Court cites in re: Cardinal Industries, Inc., 105 Bankruptcy 834, page 849. That's the Bankruptcy Court in the Southern District of Ohio, 1989.

Thus, the dissolution either by rescission of the agreements or by receivership would not affect the bankruptcy estates. This is therefore unlike the case of a debtor corporation, where dissolution of the corporation can result in a transfer of corporate assets from the bankruptcy estate to the corporation shareholders.

I refer to a 9th circuit, 1993 case, Hillis Motors, Inc. versus Hawaii Auto Dealers Association, 997 F. 2d 581, 586 to 87.

**But to avoid any interference whatsoever with the jurisdiction of the Bankruptcy Court, I specifically direct that any ruling on Mr. Cartinhour's rescission and dissolution claims will not be binding on the estate of**

>     **the partnership in the partnership's bankruptcy case.**
>     This is part of the reason that prompts me to think that we will go forward on the legal claims by Mr. Cartinhour.
>     **Finally he has abandoned any claims I should note that might be subject to the automatic stay including the derivative claims on behalf of the partnership, constructive trust on the 4,000 in the registry.**
>     **That was the only amount of money that was transferred out of the partnership account as opposed to all the other amounts that are in the registry now, with the exception of this 4,000, came out of his personal accounts with Schwab, Mr. Robertson's personal accounts. And Mr. Cartinhour is giving up the appointment of a receiver against the partnership so that such appointment would not be subject to the automatic stay**. . . .
>     So we are going forward. We're going forward on the legal claims.  I will retain the fraud claim which will be subject to defense of laches down the road. And whether or not we get to that point or not. It seems to me that we can decide at subsequent time whether or not the jury will perform an advisory role as to the fraud or not. . . .
>     I have ruled loud and clear that the automatic stay does not interfere with us proceeding in this fashion.

Tr. (D. Ct. Dkt. No. 182) at 24-27 and 29-30 (emphasis added).

In an order entered on January 4, 2011, Judge Delk directed that the bankruptcy case be transferred to this district.

D.

The Outcome of the Trial in the Civil Action

The jury trial of the legal claims in the civil action went forward.  After the jury returned its verdict on the claims at law in the civil action, Cartinhour filed on February 22, 2011, a post-trial memorandum in which he acknowledged that $4,611.66 of the funds held in *custodia legis* "came from the Citibank accounts for W.A.R., LLP which is in a Chapter 7 proceeding and which

14

cannot be effected [sic] by this case absent relief from the automatic stay, 11 U.S.C. Section 362(a)." Post-Trial Memorandum (D. Ct. Dkt. No. 162) at 2 n.3. Cartinhour stated:

> The Court should . . . find that the funds it holds, with the exception of FOUR THOUSAND SIX HUNDRED ELEVEN 66/100 DOLLARS ($4,611.66) which came directly from W.A.R., LLP's Citibank Account, are subject to an equitable trust in favor of Cartinhour and that the funds shall be delivered to the undersigned counsel for the benefit of Cartinhour forthwith.

In the accompanying footnote, Cartinhour stated:

> While Cartinhour would assert a constructive trust on $4,611.66 if W.A.R., LLP were not in Bankruptcy, the cost of filing a motion for relief from the automatic stay outweighs the benefit. Those sums, therefore, should be directed to the Chapter 7 trustee, Bryan Ross, Esquire, 1800 K Street, N.W., Suite 624, Washington, DC 20006.

The district court decided that pending the court of appeals' disposition of the appeal of the district court's preliminary injunction that had resulted in the placing of the funds *in custodia legis*, it would deny Cartinhour's request to receive the funds (other than the $4,611.66) in the registry of the court. In a Minute Order of February 24, 2011, the district court stated:

> given the interlocutory appeal pending before the D.C. Circuit, the Court denied the request of Dr. Cartinhour's counsel to disburse monies currently held in the Court registry; and . . . the Court orders that the funds deposited in the Court registry pursuant to the preliminary injunction entered in this case on March 26, 2010, shall remain in the Court registry pending further court order.

On February 25, 2011, it entered a Judgment decreeing that:

15

> IT IS ORDERED, ADJUDGED, AND DECREED, as found by the Jury on February 18, 2011, that Mr. Wade A. Robertson is liable for breach of fiduciary duty as a business partner and as a lawyer and for legal malpractice. Judgment is entered in favor of Dr. William C. Cartinhour, Jr., on Counts III and V of his Amended Counter-Complaint (Docket No. 61). Given this finding by the Jury, the Court also enters judgment in favor of Dr. Cartinhour on the Equitable Trust claim in Count XI. Given Dr. Cartinhour's withdrawal of all remaining claims, Counts I, II, IV, VI, VII, VIII, IX, X, and XII of the Amended Counter-Complaint are dismissed with prejudice. Mr. Robertson's Complaint for Declaratory Relief (Docket No. 1) is dismissed with prejudice given the Jury's finding as to the unenforceability and invalidity of the Release/Indemnification Agreement.
> 
> Dr. Cartinhour shall have and recover from Mr. Robertson the sum of $3.5 million dollars in compensatory damages and $3.5 million in punitive damages together with costs and postjudgment interest as provided by statute.

This judgment did not dispose fully of Cartinhour's claims because the amounts to be turned over pursuant to the Equitable Trust claim still awaited disposition of the appeal of the preliminary injunction.

E.

Events After Entry of the Judgment in the Civil Action

On March 30, 2011, the chapter 7 trustee, Bryan Ross, filed a Report of No Distribution in the bankruptcy case, certifying that there was no property available for distribution from the estate, signifying that he viewed the administration of the $4,611.66 as insufficient to result in a distribution to

unsecured creditors.[7] The trustee's Report of No Distribution explains why Cartinhour later receded from seeking an order directing the clerk to disburse the $4,611.66 to Ross: it would make no sense to disburse the $4,611.66 to Ross if he was not going to administer it.  On April 26, 2011, after the court of appeals affirmed the district court's preliminary injunction, Cartinhour filed in the civil action a Motion for Order Releasing Funds From Registry of Court, stating at page 2 that:

> The only money which arguably belonged to W.A.R., LLP, was the Citibank deposit [of $4,611.66].  Those funds should be held pending a request from the Chapter 7 trustee of W.A.R., LLP, abandonment of those funds by the Trustee, dismissal of the Chapter 7 case or further motion.

The proposed order submitted with that motion, if adopted by the

---

[7] Before any distribution could be made to unsecured creditors, administrative claims would have to be paid, including:

- the trustee's reasonable compensation, capped by 11 U.S.C. § 326(a) at $1,152.92, but almost always awarded in the capped amount;
- reimbursement of actual and necessary expenses under 11 U.S.C. § 330(a)(1)(B) the trustee would incur in administering the estate, including giving notice of a final report and proposed distribution; and
- any fees and expenses of the attorney who had entered an appearance on his behalf (see Dkt. No. 106), and who would likely be employed to assist Ross in carrying out his statutory duties, including his duty under 11 U.S.C. § 704(a)(5) to object to the allowance of any claim that is improper (including investigating the proofs of claims of Douglas Sims and Ray Connolly to which Cartinhour had already objected).

17

district court, would order "that immediately following entry of this Order, the clerk shall release all funds held in the Registry to Cartinhour, except for $4,611.66 which shall remain in the possession of the Registry until further order, and less expenses, if any, required by law."

On May 10, 2011, Connolly filed his Motion for Order of Civil Contempt and for Sanctions for Violating Bankruptcy Stay in this court.

II

Cartinhour and his attorneys did not violate the automatic stay. First, for the reasons noted by both Judge Delk and Judge Huvelle, the pursuit of the civil action against Robertson did not entail an action against the debtor or the debtor's property. Moreover, Judge Delk granted relief from the automatic stay to permit pursuit of the civil action.

In any event, the judgment in the District Court was against Robertson, and Robertson's property, not against the debtor. Connolly's contention regarding the moneys in the registry of the district court in the civil action is premised on the debtor's schedules, executed by Robertson, which treat all of the funds in the registry of the district court as property of the estate. As discussed in part I, above, at best only the $4,611.66 that came from a Citibank account in the debtor's name can be treated as property of the estate. As to that $4,611.66, Cartinhour and his

attorneys have sedulously not pursued Cartinhour's claim after the petition was filed.

Connolly further contends that after telling the bankruptcy court in Tennessee that dissolution would not be sought, Cartinhour acted inconsistently by continuing to pursue rescission. Connolly fails to realize that rescission and dissolution were different remedies asserted in different counts of the Amended Counter-Complaint.

Connolly further contends that Cartinhour continued to prosecute derivative claims on behalf of the partnership. Cartinhour, however, had abandoned pursuit of such claims in the joint pretrial statement filed before the bankruptcy case began. Whatever breach of fiduciary claims he pursued were his own, not the debtor's. That those claims arose out of a partnership relationship does not make them claims of the partnership.

Connolly further contends that in obtaining the part of the judgment decreeing that "Mr. Robertson's Complaint for Declaratory Relief (Docket No. 1) is dismissed with prejudice given the Jury's finding as to the unenforceability and invalidity of the Release/Indemnification Agreement," Cartinhour violated the automatic stay because this "was an action against the debtor itself as a legal business entity because it voided one of the debtor's operating agreements and released insider Cartinhour from his contractual obligations and personal

19

liability to the debtor Partnership itself." Omnibus Mem. at 25. This contention is without merit. The civil action was by and between Robertson and Cartinhour, and was not brought against and does not bind the partnership. As Cartinhour notes, the chapter 7 trustee is free, if he wishes, to try and enforce the Release and Indemnification Agreement on behalf of the estate, as the judgment in the civil action affected only the relationship between Cartinhour and Robertson.

III

An order follows denying Connolly's Motion for Order of Civil Contempt and for Sanctions for Violating Bankruptcy Stay.

[Signed and dated above.]

Copies to: Recipients of e-notification;

Ray Connolly
c/o DIBA Group, Inc.
Attn: Byron Speight
135 W. 26th St.; 11th floor
New York, NY. 10010