The document below is hereby signed.

Dated: May 3, 2012.



_S. Martin Teel Jr._

**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                              )
                                   )
W.A.R. LLP,                        )     Case No. 11-00044
                                   )     (Chapter 7)
              Debtor.              )     **Not for Publication in**
                                   )     **West's Bankruptcy Reporter**

MEMORANDUM DECISION RE IMPOSITION OF SANCTIONS
<u>AGAINST WADE A. ROBERTSON, TY CLEVENGER, AND RAY CONNOLLY</u>

This is a case in which Ty Clevenger, a member of the bar of
this court, and Wade A. Robertson repeatedly advanced the
frivolous argument that funds that W.A.R. LLP had lent to
Robertson in exchange for promissory notes were property of the
estate of W.A.R. LLP, as the debtor in this bankruptcy case, all
for the purpose of causing delay and unnecessary expense for
William C. Cartinhour, Robertson's adversary in a civil action in
the district court.  Pursuant to Fed. R. Bankr. P. 9011, the
court will impose a fine of $10,000 each, payable to the clerk,
against Clevenger and Robertson.  In addition, the court will
grant an award of fees to Cartinhour against Robertson for
utilizing Ray Connolly as a purported creditor and party adverse
to Robertson to advance arguments designed, in extreme bad faith,

vexatiously and wantonly to delay Cartinhour in his rights and to
cause him undue litigation expense.

I

SUMMARY

On November 15, 2010, Douglas Sims commenced the above-
captioned bankruptcy case by the filing of an involuntary
petition against the debtor, W.A.R. LLP, in the United States
Bankruptcy Court for the Western District of Tennessee.[1]  The
case was transferred to this court on January 4, 2011.  At the
time the petition was filed, the relationship between W.A.R.
LLP's two sole partners, Cartinhour and Robertson, had already
deteriorated, and the two were embroiled in their contentious
litigation in the United States District Court for the District

---

[1]  The question has been raised in this court whether the
*sole* purpose of this bankruptcy case was for Robertson to throw a
wrench into the pending litigation between Cartinhour and
Robertson.  There is not enough evidence in the record to support
that finding, although the court notes that the petitioning
creditor is no longer involved in these proceedings, and
Robertson was responsible for drafting the papers filed by the
most prolific would-be creditor in this case, Ray Connolly.  The
court also notes that in Robertson's affidavit, attached as
Exhibit A to his Response to Court's Order Directing Robertson to
Show Cause Why Court Ought Not Impose Sanctions Against Him;
Request for Judicial Notice & Affidavit of Wade Robertson (Dkt.
No. 166), Robertson states that "I have received no compensation,
nor have I been promised any compensation, with respect to the
preparation and filing of the involuntary Chapter 7 petition in
this bankruptcy case."  Aff. ¶ 3.  If Robertson was not
instrumental in the preparation and filing of the involuntary
petition, or not instrumental in any effort to enlist what
appears to have been a "friendly" creditor to do so, the court
wonders why Robertson attests to the fact that he received no
compensation for such work.

of Columbia.  That litigation has since resulted in a $7,000,000 judgment against Robertson in favor of Cartinhour.

Robertson has repeatedly argued to this and other courts that prosecution of Cartinhour's claims in the district court either violates the automatic stay arising in this case or otherwise improperly implicates estate property.  He has continued to advance this legally frivolous position notwithstanding multiple rulings to the contrary, and the evidence shows that he has done so in bad faith in order to advance a broader litigation strategy in multiple courts against his adversary, Cartinhour.  Robertson also engaged in an unusual and unethical strategy of ghostwriting papers on behalf of Ray Connolly, a purported creditor and adversary of Robertson in this case.  And while ghostwriting is not outright prohibited in this court, doing so in a manner that misleads the court and violates the D.C. Rules of Professional Conduct is.

The record clearly demonstrates that Robertson has intentionally and in bad faith: (1) misrepresented the legal significance of these proceedings in other courts as part of a broader litigation strategy against Cartinhour; (2) engaged in deceptive practices in this court that simultaneously violated Robertson's fiduciary duties to Ray Connolly and Robertson's duty of candor to this tribunal; and (3) advanced legally and factually frivolous arguments in this court.  In addition to

Robertson's sanctionable conduct, the court also finds that the debtor's attorney, Ty Clevenger, joined Robertson in knowingly and in bad faith advancing frivolous arguments in this bankruptcy case.

Under Rule 9011, sanctions against Robertson and Clevenger are warranted in the form of fines payable to the clerk without even reaching Robertson's misuse of Connolly. Robertson's utilization of Connolly to advance his effort to cause Cartinhour delay and unnecessary expense rose to the level of bad faith in the extreme such as to warrant awarding fees to Cartinhour arising from such misconduct pursuant to the court's inherent powers. The court will also refer Robertson's misconduct as to Connolly to the appropriate state bar authorities. Finally, although Connolly facilitated Robertson's misconduct by permitting him to ghostwrite papers on his behalf, having considered the entire record, including Connolly's testimony at the August 24, 2011 show cause hearing in front of this court, and a settlement amount that Connolly paid to Cartinhour, I conclude that Connolly's conduct does not warrant sanctions.

II

FACTUAL BACKGROUND

Wade A. Robertson is an attorney admitted to practice law in the District of Columbia and the State of California. He is not

formally admitted to practice in the United States District Court
for the District of Columbia or in this Bankruptcy Court.  In
September 2004, Robertson entered into a partnership agreement
with Dr. William C. Cartinhour, Jr. to form the debtor-
partnership, W.A.R. LLP, under the laws of the District of
Columbia.  Pursuant to the terms of the partnership agreement,
Robertson had "the exclusive right and authority to manage the
business of the Partnership and [was thus] authorized to take any
action he deem[ed] necessary in accordance with the provisions
[of the partnership agreement] and any applicable law."  By
contrast, Cartinhour was to "not have any control over the
Partnership's business [or] authority or right to act for or bind
the Partnership."  *See* Partnership Agreement (Dkt. No. 143, Exh.
B).  Although Robertson reserved to himself control over the
partnership, Cartinhour provided $3,500,000 in capital
contributions, whereas Robertson provided $3,500.  Under the
agreement, the partnership was permitted to make zero-interest
loans.  Two such loans were made to Robertson in exchange for
promissory notes, including an April 8, 2005 loan in the amount
of $1,970,000, and an April 18, 2007 loan in the amount of
$1,435,000.  The proceeds of those loans were deposited into
Robertson's personal brokerage account.  Robertson ultimately
lost approximately $2,814,065 of those funds in unsuccessful
securities trading.

A.

The Civil Action in the U.S.
District Court for the District of Columbia

The relationship between Cartinhour and Robertson eventually deteriorated, and on August 28, 2009, Robertson brought a declaratory judgment action against Cartinhour in the United States District Court for the District of Columbia, *Robertson v. Cartinhour*, Civil Action No. 09-01642, regarding W.A.R. LLP and certain agreements relating to the partnership.  Cartinhour, in turn, filed various counterclaims against Robertson. Cartinhour's amended counter-complaint asserted that Robertson committed fraud or negligent misrepresentation and breached his fiduciary duties to Cartinhour and committed legal malpractice by taking from Cartinhour $3.5 million in capital contributions for W.A.R. LLP.  The Honorable Ellen M. Huvelle has presided over the civil action.

(1)   Cartinhour's Equitable Trust Claim and the Registry Funds

Cartinhour's Amended Counter-Complaint included a Count XI (Equitable Trust) which, after pleading Robertson's wrongful acts against Cartinhour, stated:

> 104.  As a matter of equity, all assets traceable to the capital contributions of Cartinhour, including but not limited to bank accounts, brokerage accounts, stocks, bonds, real estate and personal property should be subject to a constructive trust in favor of Cartinhour.
> WHEREFORE, the premises considered, the Defendant/Counter-Plaintiff, William C. Cartinhour, Jr., requests that the Court impose a constructive trust upon

6

all such assets traceable to the $3,500,000 taken by
Robertson in favor of Cartinhour, and such other and
further relief as the nature of this case may require and
to which this Court shall appear just and proper.

Most of the funds that Cartinhour sought to reach by this request

for a constructive trust were Robertson's property (with the

majority of the funds being proceeds of the loans Robertson

received from the partnership in exchange for promissory notes).

Pursuant to preliminary orders in the district court, various

funds were placed in the registry of the district court awaiting

the outcome of Cartinhour's equitable trust claim.  The only

amount placed in the registry of the district court that came

from an account in the name of the debtor partnership was

$4,611.66 in funds held in the debtor's Citibank account, and

deposited in the registry of the district court on April 2,

2010.[2]  That deposit occurred well before the commencement of
this bankruptcy case in November 2010.  After the commencement of
the bankruptcy case, Cartinhour and his attorneys were very clear
that they were not pursing Cartinhour's claims against the
$4,611.66 out of concern that such efforts would violate the
automatic stay.

To explain in more detail, the source of the funds placed in
the registry of the district court can be traced as follows.
Robertson had caused the partnership to lend him $3,405,000
pursuant to Article XXIII of the W.A.R. LLP partnership

---

[2]  The debtor's general partner, Robertson, through counsel,
conceded at a November 19, 2010 hearing in the district court
that all but approximately $4,000 of the funds held in the
registry of the district court were funds that had been held in
accounts of Robertson, not in accounts of the debtor.
Specifically, the following colloquy ensued at a November 19,
2010 hearing:

> [THE COURT:] Where are all the assets that were
> frozen now?  Are they only in the Court registry or are
> some of them frozen in accounts someplace?
> MR. GRIFFIN: I believe of [sic] they're all in the
> Court registry, Your Honor.
> MR. KEARNEY: That is correct.
> THE COURT: So, it is close to 700,000 that is
> sitting in the Court registry.  Most of that, with the
> exception of 4,000, came out of accounts in his personal
> name; is that correct?
> MR. GRIFFIN: That is correct, Your Honor.
> MR. KEARNEY: Yes, Your Honor.

Tr. (D. Ct. Dkt. No. 182) at 6.

agreements,[3] as borne out by an accounting Robertson filed in the

civil action.[4]

Specifically, before this bankruptcy case commenced, the

district court directed Robertson to file an accounting regarding

---

[3]   The debtor has acknowledged that:

The Partnership Agreements explicitly agreed to the
issuance of loans from the partnership to the partners.
. . .   Two such loans are currently outstanding, each
issued as promissory notes to Robertson--one issued on
April 8, 2005 for $1.970 million and the other issued on
April 18, 2007 for $1.435 million.

*See W.A.R. LLP v. Cartinhour*, Adversary Proceeding No. 11-10004
(Bankr. D.D.C.), Complaint (Dkt. No. 2) ¶¶ 11-12.

[4]   In their joint pretrial statement in the civil action
(Dkt. No. 121), the parties stipulated that:

Wade A. Robertson borrowed $1,970,000 from W.A.R. LLP on
April 8, 2005, as evidenced by the promissory note at
Defendant's Exhibit 19.   That money was deposited into
Wade A. Robertson's personal brokerage account at Charles
A. Schwab & Sons, Inc.

Between April 26, 2005 and August 30, 2005, Wade A.
Robertson transferred $224,184.52 from his Charles A.
Schwab & Sons, Inc. personal brokerage account to his
personal Citibank account, leaving a balance of $10.56 in
that account as of August 31, 2005.   The balance of the
money not withdrawn, approximately $1,746,000, was lost
in unsuccessful securities trading by Wade A. Roberson in
his personal brokerage account[.]

. . .

Wade A. Robertson borrowed $1,435,000 from W.A.R. LLP on
April 18, 2007 pursuant to the promissory note at
Defendant's Exhibit 54.   That money was deposited into
Wade A. Robertson's personal brokerage account at Charles
A. Schwab & Sons, Inc.   Approximately $1,068,065,was lost
in unsuccessful securities trading by Wade A. Roberson in
his personal brokerage account.

the partnership (D. Ct. Dkt. No. 18).  On January 4, 2010,

Robertson filed an affidavit (D. Ct. Dkt. No. 25), which included

an Exhibit B, which set forth the partnership's assets as:

```
ASSETS:
Cash                                              $4,541.44
Receivables
    -(Article XXIII , WAR. Partn. Agreemt)    $3,405,000.00
Accounts Receivable
    (Contingency class claims - Expenses)       $213,111.13
Accounts Receivable
    (Contingency Class claims - Prof. Srvcs)  $3,833,440.00
Total Assets:                                 $7,456,092.57
```

Pursuant to his Equitable Trust claim, Cartinhour sought and

obtained orders in March and April 2010, before the filing of the

petition in this case, which resulted in various funds, traceable

to Cartinhour's $3.5 million in capital contributions, and that

were owned or controlled by Robertson, being placed in the

registry of the district court to be held *in custodia legis*:

- Two of the deposits, in the amounts of $20,713.75 and
  $5,000, were of moneys held by law firms representing
  Robertson, and were made pursuant to a consent order

entered on March 1, 2010.[5]

- The remaining deposits were made pursuant to a preliminary injunction entered on March 26, 2010,[6] and consisted of deposits on April 2, 2010, of $600,074.92 from Robertson's Schwab account and $4,611.66 deposited by Citibank from the debtor's Citibank account or accounts.

---

[5] The consent order directed that, among other things, it was:

> ORDERED, that any monies held directly or indirectly by Edward Griffin, Esquire, or any other attorney or expert retained by Wade A. Robertson on behalf of Wade A. Robertson in this matter, and with respect to the Bar Counsel Complaints/Investigation, and any criminal proceeding in connection with this matter, shall be surrendered for deposit into the Registry of the Court within five (5) days of the date of this Order[.]

D. Ct. Dkt. No. 70.  On March 9, 2010, pursuant to that order, Griffin Whitaker, LLC deposited $20,713.75 and Sutherland Asbill & Brennan LLP deposited $5,000.00 into the registry of the district court.  (See D. Ct. Dkt. entries preceding Dkt. No. 75.)

[6] The district court's order directed that it was:

> ORDERED, that all monies held [in] the Charles A. Schwab & Sons, Inc. brokerage account of Wade A. Robertson (xxx-0772) . . . and all Citibank accounts in the name of W.A.R. LLP, and any account of Wade Robertson subject to this Court's Consent Preliminary Injunction entered on March 1, 2010 is not to be withdrawn, moved, transferred, concealed, spent or otherwise dissipated, EXCEPT THAT Schwab and Citibank shall transfer the funds held in those accounts to the Clerk of the United States District Court for the District of Columbia for deposit into the Registry of the Court forthwith and those funds are henceforth held *in custodia legis*, regardless of their current location[.]

11

In addition to the Equitable Trust claim, the Amended Counter-
Complaint included counts for Accounting (Count I), Derivative
Action (Count VIII), Rescission (Count IX), Dissolution and
Appointment of Receiver (Count X), and Declaratory Judgment
(Count XII) (seeking to declare the agreements between Cartinhour
and Robertson unenforceable).  In the joint pretrial statement
filed in the civil action on November 5, 2010 (Dkt. No. 121),
before the commencement of this bankruptcy case, Cartinhour
elected not to pursue the claim for an Accounting (Count I) and
the Derivative Action (Count VIII).

B.

The Bankruptcy Case and
Rulings Regarding the Automatic Stay

On November 15, 2010, Douglas Sims filed an involuntary
petition commencing this bankruptcy case against W.A.R. LLP in
the United States Bankruptcy Court for the Western District of
Tennessee.  The case was later transferred to this district.

On November 17, 2010, Robertson filed in the civil action a
suggestion of bankruptcy, contending that:

> Dr. Cartinhour seeks to rescind the Partnership
> Agreements which form the very basis of the Debtor's
> existence.  To dissolve the Debtor by way of rescission
> or receivership would appear to "exert control over the
> property of the estate," and to the extent that any
> claims in the instant action do so, they are stayed by
> the Tennessee bankruptcy action.

On November 18, 2010, Cartinhour, through his attorney Patrick
Kearney, filed a reply to the suggestion of bankruptcy, in which

12

he made clear that he was electing not to pursue his claim for

appointment of a receiver, and not to pursue the $4,611.66 that

came from the account of the debtor at Citibank.  That reply (D.

Ct. Dkt. No. 130) stated:

> The Amended Counter Complaint did assert derivative
> claims for W.A.R. LLP against Robertson, which would be
> subject to the automatic stay.  But, those claims have
> been abandoned as of the filing of the pretrial
> statement.  Cartinhour also seeks the appointment of a
> receiver against W.A.R. LLP if the agreements between the
> parties are not rescinded.  That action cannot go forward
> while the automatic stay is in place.  Cartinhour also
> seeks the imposition of a constructive trust over money
> that is directly traceable to funds which he invested.
> The bulk of those monies, the remainder of the $3,405,000
> transferred to Robertson under two promissory notes are
> no longer property of the Estate – the monies went into
> the dominion, exercise and control of Robertson as
> evidenced by the fact that they were transferred to his
> personal Charles A. Schwab and Sons, Inc. account and to
> his personal Citibank account. Instead, the estate of
> W.A.R. LLP is owed money under two promissory notes made
> by Robertson.  Cartinhour does not seek to affect those
> notes.
>
> W.A.R. LLP had approximately $4,000 in a Citibank
> account which was subject to the injunction issued in
> this case. While it is Cartinhour's position that such
> funds are not property of the estate under 11 U.S.C.
> section 541 in that the money is held in trust for
> Cartinhour, the argument is too esoteric and expensive
> for such a small amount of money. Cartinhour will not
> seek the imposition of a constructive trust on money in
> the Registry of the Court that was transferred directly
> from the W.A.R. LLP Citibank account to the Registry of
> the Court while the automatic stay is in place.

Reply (D. Ct. Dkt. No. 130) at 2-3.  Accordingly, the only claims

by Cartinhour that Cartinhour was continuing to pursue in the

civil action were the claims for monetary damages against

Robertson, the claims for rescission, the claim for a declaratory

judgment that the agreements between Robertson and Cartinhour were unenforceable, and the claim to enforce a constructive trust against funds that belonged to Robertson.

Nevertheless, the debtor contended that the automatic stay barred the continued pursuit of the civil action in its entirety. In the bankruptcy court in Tennessee, the debtor and Cartinhour both filed papers addressing the issue of the reach of the automatic stay. The debtor filed an adversary proceeding, *W.A.R. LLP v. Cartinhour* (a proceeding later transferred to this court and assigned Adversary Proceeding No. 11-10004), seeking to enjoin Cartinhour's pursuit of the civil action in the district court. Cartinhour filed a motion for relief from the automatic stay.

In its complaint commencing the adversary proceeding, the debtor acknowledged that:

> The Partnership Agreements explicitly agreed to the issuance of loans from the partnership to the partners. . . . Two such loans are currently outstanding, each issued as promissory notes to Robertson--one issued on April 8, 2005 for $1.970 million and the other issued on April 18, 2007 for $1.435 million.

Compl. ¶¶ 11-12. The complaint then alleged:

> 16. As the Partnership's accounting shows, the Partnership has both intangible and tangible assets. **The tangible assets comprising the property of the estate of the debtor Partnership include cash that had been held in bank accounts in the name of the Partnership as well as cash held by Mr. Robertson in his accounts pursuant the [sic] two outstanding promissory notes payable to the debtor Partnership** . . . .    All of these remaining

14

tangible assets of the Partnership were enjoined and
seized into the Registry of the United States District
Court for the District of Columbia in a civil action upon
a motion for a preliminary injunction by Dr. Cartinhour
in March of 2010. . . . More than $630,000 in cash was
enjoined and attached into the Registry of the U.S.
District Court for the District of Columbia.

[Emphasis added.] The allegation that the "cash held by Mr.

Robertson in his accounts pursuant [to] two outstanding

promissory notes payable to the debtor Partnership" is property

of the estate was simply incorrect, and was not supported by the

facts or the law. The cash, having been lent to Robertson,

became *Robertson's* property, and the estate retained only an

interest in the promissory notes obligating Robertson to repay

those loans to the debtor. In executing the debtor's Schedule B,

Robertson again erroneously asserted that the estate retained an

interest in the funds lent to Robertson by listing the $630,000

in its entirety as property of the estate. (Bankr. D.D.C. Dkt.

No. 79.) That inaccurate Schedule B did not change the character

of those funds, cast doubt on whether the estate actually

retained an interest in those funds, or in any manner change the

fact that the $630,000 (aside from the $4,611.66 that came from

the debtor's Citibank account) was Robertson's property in which

the estate had no interest.

In an order entered on November 24, 2010, the Honorable

Paulette J. Delk of the United States Bankruptcy Court for the

Western District of Tennessee concluded that the automatic stay

did not bar the continued litigation of the civil action against
Robertson, and additionally, out of an abundance of caution,
granted relief from the automatic stay to permit the civil action
to proceed.  Specifically, Judge Delk ruled, and "SO ORDERED"
that:

> Matters being tried in the D.C. lawsuit do not involve
> the debtor as a party and are not matters that have the
> potential for immediately affecting the debtor or
> property of the estate. The matters involve one partner
> in the debtor against another partner in the debtor. The
> status as general partner does not entitle one to
> protection under the automatic stay of the
> debtor-partnership. *Patton v. Bearden*, 8 F.3d 343 (6th
> Cir. 1993), citing *In re Bank Center, Ltd*, 15 B.R. 64
> (Bankr. W.D. Penn. 1981). The court finds that the
> automatic stay does not prevent the D.C. lawsuit from
> going forward, because neither the debtor nor property of
> the estate will be affected by the trial. **Judge Huvelle
> is aware of the bankruptcy case and stated on the record
> that any ruling in the D.C. lawsuit will not reach the
> remedy of dissolution which would have some impact on the
> debtor. Even if that issue were to be reach [sic], the
> bankruptcy estate would not be affected since the rights
> of creditors of the debtor have priority over the
> partners' right to the assets of the debtor.** *In re
> Cardinal Industries, Inc.*, **105 B.R. 834 (BANKR. S.D. Ohio
> 1989).**
>
>     **Out of an abundance of caution, the court expressly
> finds that sufficient cause exists under 11 U.S.C.
> § 362(d)(1) to modify the stay to permit the D.C. lawsuit
> to go forward.**

[Emphasis added.]

Meanwhile, back in the civil action, Judge Huvelle held a
hearing on November 19, 2010, and reached the same conclusion
that the automatic stay did not apply.  Judge Huvelle ruled as
follows:

Robertson argues that the stay applies to Cartinhour's claims because Mr. Cartinhour is seeking to exercise control over the partnership's estate by obtaining rescission of the partnership agreement and therefore dissolution of the partnership.

As I rule below, I find his legal arguments to be incorrect. . . .

[A]s [an] initial matter, **362 Section (a)(1) does not stay claims against Robertson because he is not the debtor. Rather, W.A.R. is the debtor and Robertson's status as a partner of the partnership does not entitle him to protections of the automatic stay.**

I'm citing Sixth Circuit law because that's what is applicable. Patton versus Bearden, 8 F.3d. 343, page 348, Sixth Circuit '93.   Additionally, it is clear that Cartinhour's legal claims are not subject to the stay because these claims are against Robertson personally and not the partnership.

So, if [Cartinhour] were to prevail, monetary damages would be owed by Robertson individually while the partnership assets and  therefore the alleged bankrupt estate would remain uneffected [sic].

**His claim for rescission of the business agreement, partnership agreements and amendments and the release is not effected [sic] by the stay, even if it were ultimately to result in a dissolution of the partnership.** Robertson argues that dissolution of the partnership would exert control over the property of the bankrupt estate in violation of (a)(3), but the Court does not agree with this legal argument.   Partners' rights to income and distribution are subordinate to the rights of the partnership's creditors.

The Court cites in re: Cardinal Industries, Inc., 105 Bankruptcy 834, page 849. That's the Bankruptcy Court in the Southern District of Ohio, 1989.

Thus, the dissolution either by rescission of the agreements or by receivership would not affect the bankruptcy estates. This is therefore unlike the case of a debtor corporation, where dissolution of the corporation can result in a transfer of corporate assets from the bankruptcy estate to the corporation shareholders.

I refer to a 9th circuit, 1993 case, Hillis Motors, Inc. versus Hawaii Auto Dealers Association, 997 F. 2d 581, 586 to 87.

**But to avoid any interference whatsoever with the jurisdiction of the Bankruptcy Court, I specifically**

17

**direct that any ruling on Mr. Cartinhour's rescission and dissolution claims will not be binding on the estate of the partnership in the partnership's bankruptcy case.**

This is part of the reason that prompts me to think that we will go forward on the legal claims by Mr. Cartinhour.

**Finally he has abandoned any claims I should note that might be subject to the automatic stay including the derivative claims on behalf of the partnership, constructive trust on the 4,000 in the registry.**

**That was the only amount of money that was transferred out of the partnership account as opposed to all the other amounts that are in the registry now, with the exception of this 4,000, came out of his personal accounts with Schwab, Mr. Robertson's personal accounts. And Mr. Cartinhour is giving up the appointment of a receiver against the partnership so that such appointment would not be subject to the automatic stay. . . .**

So we are going forward. We're going forward on the legal claims. I will retain the fraud claim which will be subject to defense of laches down the road. And whether or not we get to that point or not. It seems to me that we can decide at subsequent time whether or not the jury will perform an advisory role as to the fraud or not. . . .

I have ruled loud and clear that the automatic stay does not interfere with us proceeding in this fashion.

Tr. (D. Ct. Dkt. No. 182) at 24-27 and 29-30 (emphasis added).

In an order entered on January 4, 2011, Judge Delk directed that the bankruptcy case be transferred to this district.

C.

Outcome of the District Court Jury Trial
and the $7,000,000 Judgment Against Robertson

The jury trial of the legal claims in the civil action went forward. After the jury returned its verdict on the claims at law in the civil action, Cartinhour filed on February 22, 2011, a post-trial memorandum in which he acknowledged that $4,611.66 of

18

the funds held *in custodia legis* "came from the Citibank accounts
for W.A.R. LLP which is in a Chapter 7 proceeding and which
cannot be effected [sic] by this case absent relief from the
automatic stay, 11 U.S.C. Section 362(a)." Post-Trial Memorandum
(D. Ct. Dkt. No. 162) at 2 n.3. Cartinhour stated:

> The Court should . . . find that the funds it holds, with
> the exception of FOUR THOUSAND SIX HUNDRED ELEVEN 66/100
> DOLLARS ($4,611.66) which came directly from W.A.R. LLP's
> Citibank Account, are subject to an equitable trust in
> favor of Cartinhour and that the funds shall be delivered
> to the undersigned counsel for the benefit of Cartinhour
> forthwith.

In the accompanying footnote, Cartinhour stated:

> While Cartinhour would assert a constructive trust on
> $4,611.66 if W.A.R. LLP were not in Bankruptcy, the cost
> of filing a motion for relief from the automatic stay
> outweighs the benefit. Those sums, therefore, should be
> directed to the Chapter 7 trustee, Bryan Ross, Esquire,
> 1800 K Street, N.W., Suite 624, Washington, DC 20006.

The district court decided that pending the court of appeals'
disposition of Robertson's appeal of the district court's
preliminary injunction that had resulted in the placing of the
funds *in custodia legis*, it would stay disbursement of the funds
in the registry of the court, and temporarily denied Cartinhour's
request that, aside from the $4,611.66, the funds be disbursed to
him. *See* D. Ct. Minute Order of Feb. 24, 2011.

On February 25, 2011, it entered a Judgment decreeing that:

> IT IS ORDERED, ADJUDGED , AND DECREED, as found by
> the Jury on February 18, 2011, that Mr. Wade A. Robertson
> is liable for breach of fiduciary duty as a business
> partner and as a lawyer and for legal malpractice.
> Judgment is entered in favor of Dr. William C.

19

> Cartinhour, Jr., on Counts III and V of his Amended
> Counter-Complaint (Docket No. 61).  Given this finding by
> the Jury, the Court also enters judgment in favor of Dr.
> Cartinhour on the Equitable Trust claim in Count XI.
> Given Dr. Cartinhour's withdrawal of all remaining
> claims, Counts I, II, IV, VI, VII, VIII, IX, X, and XII
> of the Amended Counter-Complaint are dismissed with
> prejudice.  Mr. Robertson's Complaint for Declaratory
> Relief (Docket No. 1) is dismissed with prejudice given
> the Jury's finding as to the unenforceability and
> invalidity of the Release/Indemnification Agreement.
>
> Dr. Cartinhour shall have and recover from Mr.
> Robertson the sum of $3.5 million dollars in compensatory
> damages and $3.5 million in punitive damages together
> with costs and postjudgment interest as provided by
> statute.

This judgment did not dispose fully of Cartinhour's claims

because the amounts to be turned over pursuant to the Equitable

Trust claim still awaited disposition of the appeal of the

preliminary injunction.

D.

The Trustee's Report of no Distribution

On March 30, 2011, the chapter 7 trustee, Bryan Ross, filed

a report of no distribution in the bankruptcy case, certifying

that there was no property available for distribution from the

estate, thereby signifying that he viewed the administration of

the debtor's $4,611.66 in the district court registry (which

Cartinhour had originally advised the district court to disburse

to the Chapter 7 trustee) as insufficient to result in a

distribution to unsecured creditors.[7]   On April 4, 2011, after

the case had been pending for over four months, and only after

the trustee had filed his report of no distribution, the debtor,

through its attorney Clevenger, filed schedules signed by

Robertson and "disclosing" $630,400.33 in assets on schedule B

based upon the debtor's newly asserted equitable interest in the

registry funds.   On April 25, 2011, the debtor, through its

attorney, Clevenger, also filed an objection to the trustee's

report of no distribution (Dkt. No. 103), relying on the untimely

schedules to argue that the trustee's report failed to take into

account the estate's interest in the registry funds.   Likewise,

on May 16, 2011, Robertson filed an Objection to the Trustee's

---

[7]   Before any distribution could be made to unsecured
creditors, administrative claims would have to be paid,
including:

- the trustee's reasonable compensation, capped by 11
  U.S.C. § 326(a) at $1,152.92, but almost always
  awarded in the capped amount;
- reimbursement of actual and necessary expenses
  under 11 U.S.C. § 330(a)(1)(B) the trustee would
  incur in administering the estate, including giving
  notice of a final report and proposed distribution;
  and
- any fees and expenses of the attorney who had
  entered an appearance on his behalf (see Dkt. No.
  106), and who would likely be employed to assist
  Ross in carrying out his statutory duties,
  including his duty under 11 U.S.C. § 704(a)(5) to
  object to the allowance of any claim that is
  improper (including investigating the proofs of
  claims of Douglas Sims and Ray Connolly to which
  Cartinhour had already objected).

Report of no Distribution (Dkt. No. 139).  Like the debtor,

Robertson's objection relied on the theory that the $630,400.33

in the district court registry was an asset of the estate.

Specifically, in his opposition he stated that:

> All of the $630,400.33 in cash which was sequestered into
> the registry of the district court back in March of 2010
> was entirely property of the debtor LLP partnership, was
> seized as part of the derivative action on behalf of the
> debtor, and was being held *in custodia legis* for the
> debtor to avoid conflicts with a potential personal
> bankruptcy by Robertson; thus, Cartinhour lied to the
> Trustee.

Opp. at 6.  On May 18, 2011, Clevenger filed a supplemental

objection on behalf of the debtor, again contending that all of

the $630,400.33 in the district court registry is property of the

estate, and accusing Cartinhour and his attorney of providing the

trustee with false information regarding the debtor's assets, and

of improperly concealing from the trustee the debtor's interest

in the $630,400.33.

In short, despite an established record of the parties

conceding that the debtor's interest in the registry funds was

limited to $4,611.66, Clevenger's and Robertson's responses to

the trustee's report of no distribution emphatically argued that

the estate has an interest in the entirety of the registry funds.

And as explained in more detail below, Clevenger's and

Robertson's objections were followed by a barrage of filings by

Ray Connolly (which, as later discovered, were all ghostwritten

by Robertson), that were predicated on the same factually

incorrect and legally untenable assertion that the estate had a cognizable interest in the registry funds and that those funds ought to be administered by the trustee as an asset of the estate.

E.

Connolly's Omnibus Memorandum and Related Motions Invoking
Argument That the Registry Funds are an Asset of the Estate

On May 10, 2011, Ray Connolly, a purported creditor in this case, filed:

- a Motion for Sanctions for Violating Bankruptcy Stay;

- a Motion for an Order Vacating as Void *Ab Initio* Acts Taken and Judgments Obtained in Violation of the Bankruptcy Stay;

- a Motion to Initiate Criminal Contempt Proceedings for Direct and Willful Fraud on the Bankruptcy Court;

- a Motion for an Order Directing William C. Cartinhour, Jr. and Wade Robertson to Both Appear for a Rule 2004 Examination, and Requiring the Trustee to Investigate Certain Affairs of the Debtor;

- a Motion for a T.R.O. and to Further Enjoin William C. Cartinhour, Jr. and his Attorneys From Obtaining Property of the Bankruptcy Estate Pending This Case;

- a Motion to Join in Objection to Trustee's Report of no Distribution and Trustee's Request for Discharge; and

- a Response in Opposition to the Objections of William C. Cartinhour Jr. to Claim Numbers 1 & 3.

These filings were supported by a 41-page Omnibus Memorandum of Creditor Ray Connolly, with 50 attached exhibits.

As with Clevenger's and Robertson's objections to the report of no distribution, Connolly's motions relied largely on the

frivolous argument that the estate had an interest in all of the
registry funds.  This argument, also being advanced by Clevenger
and Robertson, was little more than a repackaging of the argument
that the automatic stay barred Cartinhour from recovery in the
district court, which this and other courts had already
determined it did not.  The court denied Connolly's motions
accordingly.  That, however, did not put an end to Connolly's
filings in this court.  On July 5, 2011, Connolly filed a motion
(Dkt. No. 191) seeking to stay various orders, as well as to stay
the bankruptcy proceedings in their entirety pending the outcome
of an appeal.[8]

Connolly's standing to pursue the relief sought in his
motions depended upon his alleged status as a creditor of the
estate.  Although Connolly filed an amended proof of claim in
this case asserting a claim in the amount of $44,820.00 based
upon services performed on or before March 2010, in the course of
litigating Connolly's motions, it was brought to light that
Connolly is not a creditor of the estate.  On September 8, 2010,
Connolly filed a voluntary petition for relief under Chapter 7 of
the Bankruptcy Code (11 U.S.C.) in the U.S. Bankruptcy Court for
the Southern District of New York (Case No. 10-14769), and the

---

[8]   The notice of appeal (Dkt. No. 167) was ultimately
withdrawn pursuant to Connolly's July 22, 2011 praecipe, in which
he withdrew 34 separately filed documents in this bankruptcy
case.

case was closed on January 11, 2011, after the docketing by that case's chapter 7 trustee of a report of no distribution. Connolly did not schedule any alleged claim against W.A.R. LLP in his own personal bankruptcy case, and no order was ever entered abandoning the claim under 11 U.S.C. § 554(a) or (b). Accordingly, to the extent Connolly had an unscheduled claim against W.A.R. LLP, that claim became property of Connolly's bankruptcy estate and remained property of that estate. *See* 11 U.S.C. § 554(d). As such, Connolly lacked standing to assert that claim in this bankruptcy case. Thus, even if Connolly had advanced otherwise meritorious arguments in his papers, he ultimately lacked standing to pursue any relief as a creditor in this case.

F.

The Sanctions Motions and the Related Orders<br>to Show Cause as to Robertson, Clevenger, and Connolly

On July 6, 2011, the court denied Connolly's motion to stay various orders and the bankruptcy proceedings, and issued an order directing Connolly to appear at a hearing to show cause why Rule 9011 sanctions ought not be imposed against him, to determine who may have assisted Connolly in the preparation of these filings, and to consider whether sanctions ought to be imposed against that individual as well (Dkt. No. 196). On July 8, 2011, Cartinhour filed a motion to strike all of Connolly's papers and for sanctions (Dkt. Nos. 200 & 202), arguing that

Connolly was not actually a creditor of the debtor, and that
Connolly's filings were made in bad faith and were part of
Robertson's larger agenda to interfere with the judgment obtained
by Cartinhour in the district court civil action.  In light of
Cartinhour's motion, the court issued a further show cause order
(Dkt. No. 211) requiring Connolly to appear in person at a
hearing to permit inquiry into who, if anyone, assisted him in
preparing the papers he filed, and to:

> file a memorandum showing cause, if any he has, why the
> court ought not impose sanctions against him under Fed.
> R. Bankr. P. 9011 for pressing the frivolous argument
> that the bulk of the funds in the registry of the
> district court were property of the debtor's estate, and
> for doing so in an apparent effort to cause unnecessary
> delay in the enjoyment by William C. Cartinhour, Jr., of
> his right to those funds and to cause him an increase in
> the cost of litigation.

On July 11, 2011, the court issued an order directing
Robertson and his attorney, Ty Clevenger, to show cause (Dkt. No.
212):

> why the court ought not impose sanctions against them
> under Rule 9011 of the Federal Rules of Bankruptcy
> Procedure for pressing the frivolous argument that the
> bulk of the funds in the registry of the district court
> were property of the debtor's estate, and for doing so in
> an apparent effort to cause unnecessary delay in the
> enjoyment by William C. Cartinhour, Jr., of his right to
> those funds and to cause him an increase in the cost of

litigation.[9]

## G.

### Disclosure That Robertson had
### Ghostwritten Connolly's Filings

On July 22, 2011, Ray Connolly, who by then had hired counsel (other than Robertson), filed, through that counsel, a one-page praecipe withdrawing all of his motions and other filings in this bankruptcy case (Dkt. No. 231).  And on July 25, 2011, Cartinhour filed a praecipe (Dkt. No. 236) withdrawing his motion for sanctions against Ray Connolly, explaining that the withdrawal was made pursuant to a settlement reached between Cartinhour and Connolly under which Connolly was, *inter alia*, to pay to Cartinhour the sum of $1,000.  The praecipe attached as an exhibit an affidavit by Connolly in which Connolly disclosed that all of his *pro se* filings in this case were prepared by and

---

[9]  Just to give a sense for the magnitude of additional litigation that arose from Robertson's, the debtor's (through Clevenger), and Connolly's frivolous argument regarding the estate's interest in the registry funds, consider that the trustee's report of no distribution was filed on March 30, 2011, at which time there were only 76 docket entries on file in this case.  By the time the court held the August 24, 2011 show cause hearing, after Connolly, Robertson, and the debtor, through Clevenger, bombarded this court with filings, to which Cartinhour inevitably responded and which the court disposed of, and which led to the filing of orders to show cause and motions for sanctions, there were 266 entries on the court's electronic docket.  The needless proliferation of litigation in this case through the filing of frivolous papers was a waste of court resources and came at great expense to Mr. Cartinhour and his counsel, who were forced to respond to and defend against those filings.

signed by Robertson.  On that same date, Cartinhour filed a

motion for sanctions against Robertson (Dkt. No. 238) for

"ghostwriting pleadings, needlessly and vexatiously increasing

the cost of litigation by taking legally untenable positions

through the use of a supposedly unrepresented party and

practicing law without a license in the United States Bankruptcy

Court for the District of Columbia."

In light of Cartinhour's praecipe and Connolly's disclosures

relating to Robertson's drafting of Connolly's filings, the court

issued a supplemental order to show cause as to Connolly (Dkt.

No. 247) requiring Connolly to:

> address his recent admission that Wade Robertson drafted
> Connolly's pleadings and advised Connolly with respect to
> Connolly's filings in this case, and in light of that
> disclosure, the court will require Connolly to show cause
> why the court ought not impose Rule 9011 sanctions
> against Connolly for knowingly misrepresenting facts in
> papers filed with the court in violation of Rule
> 9011(b)(3), and for presenting papers to this court for
> an improper purpose within the meaning of Rule
> 9011(b)(1).

Similarly, the court issued an order to show cause why sanctions

ought not be imposed against Robertson based upon misconduct

identified in Cartinhour's motion to sanction Robertson and based

on additional misconduct identified by the court (Dkt. No. 248).

Specifically, the court's order directed Robertson to show cause

why the court ought not:

> (1) find that Robertson, personally, has "acted in
> bad faith, vexatiously, wantonly, or for oppressive
> reasons," such as to justify imposing monetary sanctions

28

in favor of Cartinhour pursuant to *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 258-59 (1975), or 28 U.S.C. § 1927, and impose monetary sanctions in favor of Cartinhour for attorney's fees and costs incurred by reason of such conduct;

(2) find that Robertson engaged in the unauthorized practice of law by drafting papers for Ray Connolly to file in this proceeding, and by counseling him in this proceeding in a court where he is not admitted;

(3) find that Robertson acted dishonestly:
        (a) by failing to disclose that he drafted filings for Connolly,
        (b) by drafting filings purportedly filed by Connolly in which Robertson was falsely cast as Connolly's adversary, and
        (c) by filing papers that by use of an electronic facsimile of Connolly's signature, falsely represented that Connolly had read and signed the papers, and was filing the papers.

(4) find that Robertson engaged in conduct that seriously interfered with the administration of justice by ghostwriting frivolous filings for Connolly in order to keep this W.A.R. LLP Chapter 7 bankruptcy case alive so he could argue to other courts that the automatic stay had been violated;

(5) find that Robertson made false statements of law that the automatic stay applied to the civil action between Cartinhour and Robertson in the District Court;

(6) report these findings to:
        (a) the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law; and
        (b) the disciplinary unit of each court or jurisdiction in which Wade A. Robertson is a member of the bar;

(7) report these findings to the District Court of this district with a recommendation that it bar Robertson from:
        (a) becoming a member of the bar of the District Court,
        (b) filing papers as an attorney pursuant to D. Ct. LCvR 83.2(c)(1), by joining of

record a member in good standing of the bar of
the District Court;

(c) appearing in proceedings, without
being a member of the bar of the District
Court, pursuant to D. Ct. LCvR 83.2(d), (e),
(f), or (g); and

(d) filing or drafting filings on behalf
of anyone other than himself in the District
Court or this court.

(8) find that by reason of findings (1) through (5)
above, Robertson violated Federal Rule of Bankruptcy
Procedure 9011 and impose appropriate sanctions against
him under Rule 9011(c)(2), including enjoining him from
filing or drafting filings on behalf of anyone other than
himself in this court; and

(9) find that by reason of findings (1) through (5)
set forth above, the court, pursuant to its inherent
authority, should enjoin Robertson from filing or
drafting filings on behalf of anyone other than himself
in this court, and enter such an order.

In addition to the frivolous argument relating to the

estate's supposed interest in the registry funds, the content of

Connolly's motions is significant for the adversarial posture

taken as to Robertson.  As already noted, it eventually came to

light that Robertson, not Connolly, drafted and filed these

motions on Connolly's behalf.  Of particular note in this regard

was Connolly's motion for an order directing Cartinhour and

Robertson to appear for a Rule 2004 exam.  In pertinent part,

Connolly's motion states:

In the first instance there's Robertson, who failed to
comply with the court's mandate to make the financial
disclosures of the Partnership as required by the
bankruptcy laws until after the creditor's meeting had
already been held . . . . Remarkably, five days after the
trustee's report, Robertson finally filed complete Rule
1007(a) lists and schedules on April 4, 2011.  Not

surprisingly, those belated filings revealed $630,400.33
in cash assets.    Rather than facilitating this case,
Robertson's obfuscation and delay has resulted in a mess
where the creditors now have to file objections to the
discharge, move the trustee to investigate the debtor,
and request a Rule 2004 examination.    Robertson's delay
served only to harass the creditors in pursuing their
claims   in   this   case,   and   it   looks   suspiciously
intentional.        Whether    Robertson's    actions    were
intentional or collusively carried out with Cartinhour is
something that should be explored fully at the Rule 2004
examination.

Robertson filed a two-page opposition to Connolly's motion for

sanctions against Robertson stating as follows:

It is clear that the creditors are upset, but it is
unfair to penalize Robertson personally and require him
to attend and testify at a Rule 2004 meeting when he
already testified at the first part of the creditors'
meeting.    To suggest as Mr. Connolly does that Roberson
[sic] is in cahoots with William "Bill" Cartinhour, Jr.
is not only untrue, it is unfair.    Robertson has been
cooperative with the trustee to the best as could be
expected to under the circumstances.    Robertson did
prepare    the    schedules    and    statement    of    the    LLP
partnership in concert with his communications with the
trustee Bryan Ross, and he prepared an affidavit for the
objection to the trustee's report of no distribution on
behalf of the LLP partnership. . . .    Respectfully, for
these reasons Robertson request the Court to deny Mr.
Connolly's request to have Robertson submit to a Rule
2004 examination.

The court eventually denied Connolly's various motions, including

the motion for Rule 2004 examinations.

H.

Circumstances Leading to Robertson's
Ghostwriting of Connolly's Filings

Robertson became involved in the filing of Connolly's papers
after advising Connolly that Connolly could make a claim in this
bankruptcy case.  Although Connolly had reservations about hiring
Robertson and "did not want any trouble," he lacked adequate
funds to hire a "regular" attorney.  Cartinhour eventually
learned of Robertson's involvement in the Connolly filings, and
prior to the court's show cause hearing, Connolly retained new
counsel, reached a settlement with Cartinhour and Cartinhour's
counsel, withdrew all of his filings, and disclosed the
ghostwriting arrangement to the court.

Robertson concedes that he substantially drafted all of the
filings identified in Ray Connolly's affidavit as having been
drafted by Robertson, and that he signed papers in this court on
Connolly's behalf.  It was Robertson's belief, however, that
Opinion 330 of the D.C. Bar Legal Ethics Committee authorized him
to ghostwrite filings on behalf of Connolly in these

proceedings.[10]

It was Robertson's belief that he and Connolly were adversarial as to certain issues in this bankruptcy case, and to the extent they had conflicting positions, Robertson believed that those conflicts were adequately disclosed to the court by virtue of Robertson's opposition to Connolly's motion for Rule 2004 examination.  Robertson believes that the papers filed in this case by Connolly accurately state Connolly's position with respect to this bankruptcy case.  Although Robertson contends that he does not recall whether he ever obtained a written waiver of any conflict of interest between Robertson and Connolly, the court finds that Robertson did not advise Connolly of any potential or actual conflict of interest, and he did not obtain or pursue a waiver.[11]

Unlike Robertson, Connolly has no legal training.  Connolly did not write any of the papers filed in his name and he did not

---

[10]   In Opinion 330 "Unbundling Legal Services" the D.C. Bar Legal Ethics Committee concluded, *inter alia*, that "nothing in the D.C. Rules of Professional Conduct requires attorneys who assist *pro se* litigants in preparing court papers to place their names on these documents or otherwise disclose their involvement in the provision of legal services through unbundled legal service arrangements. . . .  The duties that generally attach to lawyer-client relationships, including those of competence, diligence, loyalty, communication, confidentiality and avoidance of conflicts of interest, apply to such relationships."

[11]   Connolly testified that no such waiver was ever discussed or granted.  The court finds Connolly's testimony on this point credible.

sign any of those papers.  He did not know what most of the
filings were, although he reviewed the general facts with
Robertson before the motions were filed.  As to the content of
Connolly's filings, Connolly did not know that he had asked to
examine Robertson under Rule 2004 in one of his motions, and he
did not know that Robertson had opposed such a request.  When
Connolly's papers were filed, Connolly would receive an
electronic notification that the filing had been made with the
bankruptcy court, but the actual copies of the documents were
sent to Connolly by regular mail, and it was only upon receipt of
the mailed copies that Connolly would read the documents.[12]

In the course of advising Connolly, Robertson made no
meaningful inquiry regarding the impact of Connolly's personal
bankruptcy case on Connolly's status as a creditor.  Connolly did
not show his personal bankruptcy schedules to Robertson.  Those

---

[12]  In an affidavit filed on August 22, 2011, as an
attachment to Connolly's Supplemental Response in Opposition to
the Court's Show Cause Order Why Rule 9011 Sanctions Ought Not be
Imposed Against Him (Dkt. No. 265), Connolly states that he "read
all the papers that [he] filed in this bankruptcy case before
they were filed with the court, and those papers accurately
reflected my relationship with Mr. Robertson, and my
disagreements with Mr. Robertson which are related to this
bankruptcy case."
     A different picture emerged at the August 24, 2011 hearing,
however, where Connolly testified under oath that in many
instances he would receive an e-notification that a document had
been filed on his behalf, but he would not actually review that
document until a hard copy arrived through regular mail delivery.
The court finds Connolly's hearing testimony credible, and the
court disregards the affidavit to the extent it contradicts
Connolly's testimony on this point.

bankruptcy schedules did not disclose that any money was owed

from W.A.R. LLP to Connolly.  At the time Robertson was filing

papers on Connolly's behalf in this bankruptcy case, he was

unaware that Connolly lacked creditor status to participate in

these proceedings.

I.

Robertson and Clevenger's Unrelenting
Invocation of the Automatic Stay as Supposed
Grounds for Voiding the District Court Judgment or
Otherwise Preventing Cartinhour From Proceeding Against Robertson

This is not the first time that Robertson and Clevenger, in

an effort to harass Cartinhour with respect to his efforts to

obtain relief against Robertson, have inappropriately argued to

this and other courts that, notwithstanding prior rulings of the

district court and the bankruptcy court to the contrary, the

automatic stay barred Cartinhour from proceeding against

Robertson in the district court.

One example arose in the appeal that W.A.R. LLP and Douglas

Sims, the creditor who filed the involuntary petition, filed in

the United States District Court for the Western District of

Tennessee, Case No. 2:11-cv-02082-JPM, from Judge Delk's January

4, 2011 Order Transferring Bankruptcy Case and Related Adversary

Proceedings to the United States Bankruptcy Court for the

District of Columbia.  Sowing procedural confusion, W.A.R. LLP

and Sims filed in that appeal on March 8, 2011, a Joint Motion

for Sanctions, Injunctive Relief, Damages, Contempt Proceedings,

and to Declare Judgment Void (copy attached to Dkt. No. 58 in this case).  The only issue properly before the District Court for the Western District of Tennessee, sitting as an appellate court, was the propriety of Judge Delk's order of transfer.  The district court, sitting as an appellate court, had no authority to address any other issues concerning the bankruptcy case.[13] Moreover, Judge Delk's November 24, 2010 order, granting relief from the automatic stay, had never been appealed.  Finally, sitting as an appellate court reviewing a bankruptcy court decision, the district court had no authority to review a judgment of a sister district court.  Nevertheless, based on alleged violations of the automatic stay, the Joint Motion and its attached memorandum requested that the district court grant sanctions, injunctive relief, and damages, and initiate contempt proceedings against Cartinhour and his attorneys, and declare the judgment entered by the United States District Court for the District of Columbia void.  This Joint Motion is evidence of the bad faith of W.A.R. LLP and its attorney, Clevenger, as it was part of a deliberately misleading litigation strategy intended to

---

[13]   The District Court for the Western District of Tennessee had never withdrawn from the bankruptcy court the reference of the bankruptcy case to the bankruptcy court under 28 U.S.C. § 157, and by March 8, 2011, the bankruptcy case had long since been transferred to this district, so it was too late to withdraw the reference in any event.  All of the bankruptcy jurisdiction under 28 U.S.C. § 1334(b), except for the isolated issue on appeal in the Western District of Tennessee, now rested in this district.

36

frustrate Cartinhour's collection efforts and was likewise
intended to put Cartinhour to the burden and expense of having
repeatedly to defend against meritless arguments.  Although this
court cannot enter sanctions against Clevenger for his conduct in
another court, the bad faith in filing the Joint Motion bears on
whether the filings by Clevenger in this court were made in bad
faith.[14]

Likewise, in an April 28, 2011 reply brief filed in support
of a motion to stay, Robertson, through his attorney Clevenger,
argued to the United States District Court for the Southern
District of New York in the case of *Robertson v. Cartinhour*, Case
No. 10-cv-8442, that in light of the bankruptcy stay,
Cartinhour's judgment in the district court was void *ab initio*.
Dkt. No. 53, Case No. 10-cv-8442 ("[i]f the D.C. judgment is void
*ab initio*, as it appears to be, then all of the Defendants'
arguments about claim preclusion will be moot.").  The court
finds that Robertson's representation to another tribunal that
the automatic stay barred Cartinhour's action in the district
court, even after Bankruptcy Judge Delk had ruled to the contrary
(as had Judge Huvelle), was part of a deliberately misleading

---

[14]   At the hearing in this court, Clevenger advised that he
had received no compensation in this case.  This strongly
suggests that Robertson was the attorney who drafted the Joint
Motion as it was he, not the debtor, who stood to benefit from
causing Cartinhour and his attorneys expense.  Nevertheless,
Clevenger signed the papers, and acted in bad faith in filing
papers he must have known were frivolous.

litigation strategy intended to frustrate Cartinhour's collection efforts and was likewise intended to put Cartinhour to the burden and expense of having repeatedly to defend against this meritless argument.

### III

COURT'S ORDER TO SHOW CAUSE WHY IT OUGHT NOT
IMPOSE RULE 9011 SANCTIONS AGAINST ROBERTSON AND CLEVENGER

On July 11, 2011, and in accordance with Fed. R. Bankr. P. 9011(c)(1)(B), the court entered an order directing Wade A. Robertson and Ty Clevenger to show cause why the court ought not impose sanctions against them under Fed. R. Bankr. P. 9011 (Dkt. No. 212) for pressing the frivolous argument that the bulk of the funds in the registry of the district court were property of the debtor's estate, and for doing so in an apparent effort to cause unnecessary delay in the enjoyment by William C. Cartinhour, Jr., of his right to those funds and to cause him an increase in the cost of litigation.  Rule 9011, as in the case of Fed. R. Civ. P. 11, authorizes such a *sua sponte* order.  *See Novak v. Capital Mgmt. & Dev. Corp.*, 241 F.R.D. 389 (D.D.C. 2007) (sanctions imposed pursuant to court's *sua sponte* show cause order).  For the reasons that follow, the court will impose a monetary sanction of $10,000 each under Rule 9011 against both Robertson and Clevenger, to be paid to the clerk of the court.

Robertson and Clevenger have filed a response to the court's

show cause order (Dkt. Nos. 233 & 240) contending that: (1) in light of *In re Don/Mark P'ship*, 14 B.R. 830 (D. Colo. 1981), their position that the funds held in the registry of the district court were property of the debtor's estate was not legally frivolous; and (2) at the time this bankruptcy case was filed, Clevenger and Robertson had a good faith basis for believing that the disputed funds were, arguably, being held by the district court *in custodia legis* for the benefit of the debtor.  The court rejects both of these arguments and finds that Rule 9011 sanctions are warranted.

### A.

Argument That the Estate had an Interest in the Bulk of the Funds Held by the District Court was Frivolous

Fed. R. Bankr. P. 9011(b) provides that by filing a petition, pleading, written motion, or other paper, an attorney or unrepresented party thereby certifies that:

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> > (1) is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

Fed. R. Bankr. P. 9011(b)(1)-(2).

39

The court's show cause order required Robertson and Clevenger to show cause why sanctions ought not be imposed both for advancing frivolous arguments in their filings and for doing so for an improper purpose. The court finds that both Robertson and Clevenger violated Rule 9011(b)(1) (improper purpose) and Rule 9011(b)(2) (frivolous argument), and monetary sanctions against both Clevenger and Robertson are warranted.

Robertson's and Clevenger's repeated assertion that the entirety of the $630,000 held in the registry of the United States District Court for the District of Columbia pursuant to orders entered in *Robertson v. Cartinhour*, Civil Action No. 09-01642, pending in that court, is property of the estate, is frivolous for purposes of Rule 9011 sanctions. A reasonable attorney in like circumstances could not have believed this implausible argument to be factually or legally justified.[15] *See Burns v. George Basilikas Trust,* 599 F.3d 673, 677 (D.C. Cir. 2010), quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998);

---

[15] In disposing of an appeal of orders entered in this bankruptcy case, the district court, quoting Cartinhour, agreed that "[t]he proposition that an unsecured loan based upon a promissory note does not reserve to the Lender any property right in the cash defies citation because it is so fundamental." *In re W.A.R. LLP*, 11-cv-01574 (Dkt. No. 22) (D.D.C. January 27, 2012). Although not part of the record in these show cause proceedings, that observation is consistent with this court's determination that Robertson's and Clevenger's argument regarding the debtor's retained interest in the registry funds is at odds with very basic legal principles, and a reasonable attorney would have known better than to advance such a meritless argument.

*Lerch v. Boyer*, 929 F. Supp. 319, 324 (N.D. Ind. 1996) (Rule 11 sanctions appropriate when "legal arguments presented [by party] . . . are utterly implausible and characterized by abuse."). There is no dispute that the funds at issue were lent to Robertson pursuant to a loan provision in the partnership agreement in exchange for promissory notes executed in favor of the partnership.[16]  This is not the case of a litigant relying on a minority or unpopular view of the law; rather, it is the case of a party and an attorney advancing a theory that serves their common purpose with complete disregard for the fact that it is a factually and legally unsupported and untenable position.   The

---

[16]  *See, e.g.,* W.A.R.'s Amended Emergency Motion for TRO and Injunction, at 5 (filed by Clevenger and assigned Dkt. No. 3 in *W.A.R. LLP v. William Cartinhour (In re W.A.R. LLP)*, Adv. Pro. No. 11-10004, and incorporated by reference in debtor's Objection to Emergency Motion of William C. Cartinhour, Jr. for Relief From Automatic Stay (Dkt. No. 13 in Case No. 11-00044)); Debtor's Supplemental Objection to the Trustee's Report of No Distribution, at 4-5 (Dkt. No. 143); Wade Robertson's Response to Court's Order Directing Robertson and Clevenger to Show Cause, at 3, 5 (Dkt. No. 233).

argument did not pass Rule 9011 muster from the outset,[17] and, in any event, it had become painfully obvious that the argument was violative of Rule 9011 once both Judge Delk and Judge Huvelle had rejected the argument shortly after the commencement of the bankruptcy case, yet the argument was advanced again and again.

(1)  *In re Don/Mark P'ship* Does not Help
     Robertson and Clevenger

The funds alleged by Robertson and Clevenger to be estate property were transferred to Robertson's personal account as a *loan*. Accordingly, the funds became Robertson's property. Amazingly, Robertson and Clevenger cite to *In re Don/Mark P'ship*, 14 B.R. 830 (D. Colo. 1981), as authority to the contrary. Rather than casting doubt on the ownership interest retained by a partnership in funds lent to a partner, however, *In re Don/Mark P'ship* stands for the simple proposition that the titling of an asset in the name of an individual partner rather than in the

---

[17]   Although Robertson and Clevenger note that they took this position before the court issued an opinion definitively rejecting the argument, that does not render the argument non-frivolous and immune from Rule 9011 sanctions.  Presumably Clevenger and Robertson could dream up countless (albeit meritless) ways in which the stay somehow prevents Cartinhour from accessing the registry funds, but that does not mean that Clevenger and Robertson get a free pass to test each of these stay-related arguments, no matter how silly, before Rule 9011 applies.  Moreover, in the debtor's adversary proceeding for injunctive relief, the U.S. Bankruptcy Court for the Western District of Tennessee, in denying the motion for a temporary restraining order, had already rejected the debtor's argument that the bulk of the funds in the registry in the civil action pending before Judge Huvelle, the funds that came from accounts of Robertson, were property of the estate.

name of the partnership is insufficient to rebut a statutory
presumption that property acquired using partnership funds is a
partnership asset.

In *In re Don/Mark P'ship*, the debtor-partnership sought to
sell a house.  Although the house was purchased using partnership
funds, title was held in the name of two of the partnership's
three partners as tenants in common.  *Id*. at 832.  After
performing a title search in anticipation of sale, the debtor-
partnership learned that the house was encumbered by several
judgment liens against the individual partners, which liens were
perfected against the property postpetition.  The debtor sought
an order to sell the house free and clear of all liens under the
theory that the house fell within the broad definition of
property of the estate, and the postpetition perfection of liens
against that property therefore violated 11 U.S.C. § 362(a)(4).
Citing to Colorado law, C.R.S. § 7-60-108(2), which provides that
"[u]nless the contrary intention appears, property acquired with
partnership funds is partnership property," the U.S. District
Court for the District of Colorado held that: (1) because the
house was purchased using partnership funds, the house was
presumed to be partnership property unless a contrary intention
appeared; and (2) the listing of legal title in the names of two

of the partners did not rebut that presumption.[18]  *Id.* at 832.
Accordingly, the court concluded that the postpetition liens
encumbering the property violated 11 U.S.C. § 362(a)(4), and the
debtor was entitled to an order authorizing the sale of the
property free and clear of the postpetition liens.

By claiming that it supports their position, Robertson and
Clevenger grossly mischaracterize the holding of *In re Don/Mark
P'ship*, a particularly troublesome fact given that they advance
the argument in response to a Rule 9011 show cause order.  *In re
Don/Mark P'ship* is a very short decision that expressly
acknowledges and cites as support *Oswald v. Dawn*, 354 P.2d 505,
510 (Colo. 1960), a case that stands for the proposition that the
presumption of partnership ownership arising under C.R.S. § 7-60-
108(2) *is rebutted* if the funds at issue were transferred by the
partnership to one of the partners *as a loan* and were intended by

---

[18]  The W.A.R. LLP partnership agreement is governed by
District of Columbia law, not Colorado law.  Similar to the
Colorado statute at issue in *In re Don/Mark P'ship*, however, D.C.
Code § 33-102.04(c) provides that "[p]roperty is presumed to be
partnership property if purchased with partnership assets, even
if not acquired in the name of the partnership or of 1 or more
partners with an indication in the instrument transferring title
to the property of the person's capacity as a partner or of the
existence of a partnership."  The money at issue here was not
used to acquire property.  That renders the D.C. (and Colorado)
statutory provisions inapposite.  Moreover, as explained in this
decision, even if the presumption arising under these provisions
did apply, it was necessarily rebutted by the fact that Robertson
received the funds as a loan.

the partners to be treated as a loan, as in this case.[19]

Suggesting that *In re Don/Mark P'ship* casts doubt on the debtor-partnership's ownership interest in the funds lent by the partnership to Robertson in exchange for promissory notes constitutes a legally frivolous argument under Rule 9011.  Not only were the funds at issue in this case not used to acquire any property, making the statutory presumption arising under D.C. Code § 33-102.04(c) inapplicable, there is no dispute that Robertson received the funds at issue as *a loan* pursuant to the terms of the partnership agreement and in exchange for promissory notes.  That rebuts any possible presumption that the funds remained partnership property, and demonstrates that they were not subject to the automatic stay arising in this bankruptcy case.

    (2)  Robertson's Funds Were not Held *in Custodia Legis* for the Benefit of the Estate.

Robertson and Clevenger further contend that their argument is rendered non-frivolous by virtue of the district court having

---

[19]  In *Oswald v. Dawn*, a deceased partner's estate brought an action for an accounting of certain partnership transactions. One of the disputed transactions involved funds withdrawn by a partner from the partnership account, which were then used to fund the construction of a building.  The Supreme Court of Colorado framed the question as being whether the building, having been constructed using partnership funds, was partnership property, or if instead the funds were transferred to the partner as a loan.  The loan theory was ultimately borne out by the evidence at trial, and the property was thus found to be an asset belonging to the individual partner, not the partnership.

taken possession of Robertson's funds *in custodia legis* at a time when Cartinhour was still pursuing his district court counterclaim against Robertson as a derivative claim on behalf of W.A.R. LLP.  Cartinhour withdrew his derivative action, and the only claims ultimately asserted with respect to the funds held in the registry were claims asserted by Cartinhour in his individual capacity.  The fact that the district court took possession of the funds did nothing to alter the legal character of Robertson's funds as non-partnership funds, and Robertson and Clevenger have not pointed to any legal authority that would support an alternate view.  There is no dispute that the funds were lent to Robertson in exchange for promissory notes executed in favor of the partnership.  No matter how desperately Robertson and Clevenger wish it were otherwise, there is no non-frivolous interpretation of the law that would validly support the argument that the estate retained an interest in Robertson's funds held in the district court registry.

Clevenger and Robertson, however, further argue that they had a good faith basis for contending that the funds held in the district court registry were estate property because, according to Clevenger and Robertson, absent a final accounting and settlement of the partnership, partners cannot bring legal actions against one another, and any exceptions to that rule do not apply here.  According to Robertson and Clevenger, only the

46

partnership itself can permissibly maintain an action against a partner for that partner's breach of fiduciary duty, and accordingly, any action for breach of fiduciary duty against Robertson belonged to the debtor-partnership and not Cartinhour. By extension, and because funds were held in the registry based on an action that should have been pursued by the partnership rather than by Cartinhour, Robertson and Clevenger contend they had a reasonable basis for concluding that the funds held in the district court registry were held for the benefit of the debtor-partnership.

This convoluted argument does not persuade me that Clevenger and Robertson advanced their argument in good faith. To the extent there is legal support for the contention that Cartinhour was not permitted to pursue his claims in the district court, that states grounds for a Rule 12(b)(6) motion to dismiss in the district court, not a basis for altering the entity for whose benefit the funds in the district court registry were being held. The partnership was never a party to and never intervened in the district court litigation, Cartinhour remained the counter-plaintiff at all times, and the derivative and accounting claims were abandoned for the very reason that Cartinhour was taking all precautions necessary to avoid a violation of the automatic stay. For Clevenger and Robertson nevertheless to claim that they had a good faith basis for believing that the registry funds were being

held *in custodia legis* for the benefit of the partnership is incredible.

On August 22, 2011, Robertson filed a further response to this court's order and to Cartinhour's sanctions motion (Dkt. No. 266). In that filing, Robertson tries once again to make a case for the proposition that the estate held a contingent interest in the funds held *in custodia legis* by the district court. He makes much of the fact that Robertson was no longer in custody or control of the funds at the time this case was filed, and he likewise places great emphasis on the fact that the funds were taken under the district court's control while Cartinhour was still pursuing derivative claims on behalf of the partnership. Cartinhour, however, abandoned his derivative claim. And at all times, Robertson's funds were held for the exclusive benefit of Cartinhour; his abandonment of the derivative claim simply reinforces the view that Cartinhour properly respected the limitations imposed by the automatic stay arising in this case, and does not support the view that Robertson's funds ever were or ever could have been impressed with an interest of the estate.

Not only is this argument completely lacking in merit on its face, it also asks the court to ignore the context in which Robertson's funds were required to be paid by Robertson into the registry of the court in the first place. The district court's freezing of Robertson's assets was specifically and expressly

48

done for Cartinhour's benefit.  The district court perceived

Cartinhour to be a vulnerable elderly man whom Robertson had

taken advantage of, and in requiring Robertson to pay his funds

into the registry, the district court was very clear that it was

doing so because it believed it needed to protect Cartinhour from

Robertson.  Had there been a defect in Cartinhour's counterclaims

warranting dismissal, the notion that the district court would

have then simply treated the funds as being held for the benefit

of the partnership, a partnership that was under the exclusive

control of the party from whom Cartinhour was determined to need

protection and whose conduct precipitated the need for the court

to hold the funds pending the outcome of the litigation, is

absurd.[20]

For all of these reasons, the court rejects Clevenger's and

Robertson's explanation for why these arguments are non-frivolous

or advanced in good faith.  Accordingly, the court will impose

sanctions against both Robertson and Clevenger for violating Rule

9011(b)(2) based upon their repeated assertion of this legally

---

[20]  To further illustrate the absurdity of Robertson's claim
that he believed that the funds were being held for the benefit
of the debtor partnership, the court observes that for the
partnership to have sought a recovery from the registry funds in
the district court proceeding, it would have had to pursue relief
against Robertson in the district court, either by intervening or
seeking to be substituted as the counter-plaintiff.  It is, of
course, not surprising that Robertson, the managing partner of
the debtor, never caused the partnership to pursue legal claims
against himself.

frivolous argument.

B.

Robertson and Clevenger Advanced the
Frivolous Argument for an Improper Purpose

The court further finds that this frivolous argument was advanced by Robertson and Clevenger for the improper purpose of causing unnecessary delay in the enjoyment by William C. Cartinhour, Jr., of his right to the funds held in the district court registry, and to cause him an increase in the cost of litigation.

Robertson, in his August 22, 2011 response, contends that the papers he filed in this case could not have been filed with an intent to delay Cartinhour's access to the registry funds given that the question of when the funds were released was entirely within the control and jurisdiction of the U.S. Court of Appeals.  The fact that Cartinhour had additional hurdles to clear in order to access the funds does not alter the fact that Robertson's efforts in this bankruptcy case have been part of a relentless effort to prevent Cartinhour from obtaining a judgment against Robertson, and, ultimately, to prevent Cartinhour from looking to the registry funds to satisfy the judgment he obtained.

The court finds that Robertson's motivation for filing frivolous motions in this case was the improper purpose of harassing Cartinhour and needlessly and without grounds

50

multiplying these proceedings thereby increasing the cost and burden of litigation. *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1180 (D.C. Cir. 1985) ("while a party or counsel is not to be penalized for maintaining an aggressive litigation posture, attorneys do not serve the interest of their clients, of the profession, or of society when they assert claims or defenses grounded on nothing but tactical or strategic expediency." (internal quotations and citations omitted)); *Byron Ctr. State Bank v. Lake Odessa Livestock Auction, Inc. (In re Van Rhee)*, 80 B.R. 844, 848 (W.D. Mich. 1987) ("Improper purpose may be manifested by excessive persistence in pursuing a claim in the face of numerous adverse rulings, or by obstinate conduct unwarranted by the amounts or issues in controversy."). This is the only reasonable inference to be drawn from Robertson's unwillingness to retreat from frivolous stay-related arguments in just about every aspect of his litigation campaign against Cartinhour.

Likewise, Clevenger has knowingly advanced these frivolous arguments on behalf of his client, the debtor. Although his personal motivation for doing so may differ from Robertson's, he is equally accountable for his role in facilitating Robertson's harassment of Cartinhour through the filing of frivolous papers on behalf of the debtor. Engaging in this conduct, even if he had less to gain from it than Robertson, still constitutes bad

faith.  Accordingly, the court will impose sanctions against

Clevenger and Robertson for violating Rule 9011(b)(1).

C.

Sanctions Against Robertson and Clevenger Under Rule 9011

According to Rule 9011(c)(2):

> A sanction imposed for violation of this rule shall be
> limited to what is sufficient to deter repetition of such
> conduct or comparable conduct by others similarly
> situated.  Subject to the limitations in subparagraphs
> (A) and (B), the sanction may consist of, or include,
> directives of a nonmonetary nature, an order to pay a
> penalty into court, or, if imposed on motion and
> warranted for effective deterrence, an order directing
> payment to the movant of some or all of the reasonable
> attorneys' fees and other expenses incurred as a direct
> result of the violation.

Rule 9011 sanctions are appropriate to address "patent

misstatements of fact and law and [the] attempted re-argument of

defenses already ruled upon by the Court."  *In re S. Indus.*

*Banking Corp.*, 91 B.R. 463, 465 (Bankr. E.D. Tenn. 1988).[21]  *See*

*also McLaughlin v. Bradlee*, 602 F. Supp. 1412 (D.D.C. 1985) (Rule

11 sanctions appropriate to address pursuit of claims already

adjudicated).  Courts have broad discretion to decide the

appropriate form of sanctions, which may include "a warm friendly

discussion on the record, a hard-nosed reprimand in open court,

compulsory legal education, monetary sanctions, or other measures

---

[21]  Advancing frivolous arguments is also a basis for
imposing sanctions against an attorney under 28 U.S.C. § 1927.
*See Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th
Cir. 1984) (sanctions under 28 U.S.C. § 1927 appropriate when an
attorney "intentionally file[s] or prosecute[s] a claim that
lacks a plausible legal or factual basis."); *Jones v. Cont'l
Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) ("when an attorney
knows or reasonably should know that a claim pursued is
frivolous, or that his or her litigation tactics will needlessly
obstruct the litigation of nonfrivolous claims, a trial court
does not err by assessing fees attributable to such actions
against the attorney.").  The court's show cause order addressing
Robertson's and Clevenger's conduct, however, addressed only Rule
9011 sanctions, and in disposing of that show cause order, the
court will limit itself to imposition of sanctions under Rule
9011.
  As concerns Robertson's conduct, the court issued a second
show cause order that expressly contemplates sanctions against
Robertson under § 1927.  Likewise, Cartinhour's motion for
sanctions against Robertson invokes § 1927.  As explained later
in this opinion, Robertson proceeded *pro se* and is not admitted
to practice in this court, placing his conduct beyond the reach
of § 1927.  Although Clevenger *is* admitted to practice in this
court, and could be sanctioned under § 1927 , the court did not
threaten the imposition of sanctions under that provision in its
order, and although Cartinhour filed a motion for sanctions
against Clevenger under 28 U.S.C. § 1927 (Dkt. No. 60), that
motion was ultimately dismissed (Dkt. No. 65) and was never
renewed.

appropriate to the circumstances."[22]  *Thomas v. Capital Sec.*
*Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988).

The court will impose Rule 9011 sanctions against Robertson
for filings he made on his own behalf after the filing of the
report of no distribution, and will separately sanction Clevenger
for filings he made on behalf of W.A.R. LLP after the filing of
the report of no distribution.[23]

Filings submitted by Clevenger on behalf of the debtor
following the trustee's report of no distribution include:

---

[22]  Rule 9011 provides for an award of attorney's fees on
motion, but it does not permit an award of attorney's fees when
sanctions are imposed pursuant to a court's *sua sponte* show cause
order.  Although Cartinhour's motion for sanctions against
Robertson alleges violations of Rule 9011, Cartinhour failed to
comply with the safe harbor provision of Rule 9011(c)(1)(A).
Accordingly, in awarding monetary sanctions under Rule 9011, the
court will require payment of the sanction into the court rather
than awarding attorney's fees.

[23]  Clevenger also violated Rule 9011(a) by filing the
complaint in the adversary proceeding assigned the docket number
11-10004 in this court (after it was transferred from the Western
District of Tennessee).  Clevenger signed that complaint and it
included allegations that the bulk of the $630,000 in funds in
the registry of the district court, the funds that came from
accounts of Robertson, were property of the estate.  The court's
order to show cause, however, was entered in the main case, and
Clevenger might argue that he was not given notice that the court
was considering sanctioning him for his conduct in the adversary
proceeding.  Accordingly, the court will limit sanctions to the
filings in the main case.  Nevertheless, Clevenger's assertion of
the frivolous allegation in the adversary proceeding, and Judge
Delk's rejection of that allegation, is evidence that bears on
the showing that Clevenger's later filings were made in bad
faith, and were intended to harass and cause Cartinhour
additional expense.

- The Debtor's Schedules (Dkt. No. 79) (alleging that the estate has an equitable interest in the $630,400.33 in registry funds, and attaching supporting documentation relating to those funds);

- The Debtor's Statement of Financial Affairs (Dkt. No. 80) (listing the $630,400.33 in registry funds as property of the debtor in the hands of a court-appointed official);

- Objection to Trustee's Report of no Distribution and Objection to Discharge of Trustee and Closing of Bankruptcy (Dkt. No. 103) (objecting to report of no distribution and closing of case based upon the recently scheduled $630,400.33 in registry funds); and

- Debtor's Supplemental Objection to the Trustee's Report of no Distribution, and Objection to Discharge of Trustee and Closing of Bankruptcy Case; With Motion to Supplement for Good Cause Shown (Dkt. Nos. 143 & 146) (further pursuing the argument that the $630,400.33 of cash in the registry of the district court is property of the estate).

Filings submitted by Robertson on his own behalf after the filing

of the trustee's report of no distribution include:

- Objection to Trustee's Report of no Distribution and Trustee's Request for Discharge with Motion to File Objection out of Time for Good Cause Shown; or, Alternatively, Motion to Join Debtor's Objection to Trustee's Report of no Distribution and Trustee's Request for Discharge (Dkt. No. 139) (relying on the argument that the $630,400.33 of cash in the district court registry is property of the estate); and

- Objection of Insider-Creditor Wade Robertson to Creditor Ray Connolly's Omnibus Motions for Sanctions (Dkt. No. 157, as amended by Dkt. No. 161) (Robertson's objection to a filing in which Connolly seeks, *inter alia*, an order authorizing a Rule 2004 examination of Robertson based upon Robertson's failure promptly to disclose the estate's interest in the $630,400.33 in registry funds; the motion to which Robertson was objecting was ghostwritten by Robertson).

Robertson's and Clevenger's complete disregard for the facts and law in advancing their frivolous argument generated a staggering amount of work for the court, and has put Cartinhour and his attorney to the unnecessary burden of defending against frivolous arguments in this and in other courts.  In order to deter similar conduct by Clevenger and Robertson in the future, and likewise to deter other attorneys from advancing frivolous arguments merely to keep a bankruptcy case pending or to cause unnecessary expense for an opponent, the court will impose monetary sanctions against Clevenger and Robertson in the amount of $10,000 each, payable to the clerk of the court.

IV

CARTINHOUR'S MOTION FOR SANCTIONS AND COURT'S SHOW
CAUSE ORDER REGARDING THE IMPOSITION OF SANCTIONS
AGAINST ROBERTSON IN CONNECTION WITH ROBERTSON'S
PREPARATION AND FILING OF PAPERS ON BEHALF OF RAY CONNOLLY

William C. Cartinhour, Jr. has filed a motion for sanctions against Wade A. Robertson for ghostwriting papers on behalf of Ray Connolly, needlessly and vexatiously increasing the cost of litigation by taking legally untenable positions through the use of a supposedly unrepresented party, and practicing law without a license in the U.S. Bankruptcy Court for the District of Columbia (Dkt. No. 238).  In light of Cartinhour's allegations and the record in this case, the court issued a related Order to Show Cause Why Sanctions Ought Not be Imposed Against Wade A.

56

Robertson Based on Misconduct Identified in William C.
Cartinhour, Jr.'s Motion to Sanction Wade A. Robertson and Based
on Additional Misconduct Identified by Court (Dkt. No. 248).
Specifically, the court's order, as already noted, directed
Robertson to show cause why the court ought not:

(1) find that Robertson, personally, has "acted in bad
faith, vexatiously, wantonly, or for oppressive reasons," such
as to justify imposing monetary sanctions in favor of
Cartinhour pursuant to *Alyeska Pipeline Serv. Co. v.
Wilderness Soc.*, 421 U.S. 240, 258-59 (1975), or 28 U.S.C. §
1927, and impose monetary sanctions in favor of Cartinhour for
attorney's fees and costs incurred by reason of such conduct;

(2) find that Robertson engaged in the unauthorized
practice of law by drafting papers for Ray Connolly to file in
this proceeding, and by counseling him in this proceeding in
a court where he is not admitted;

(3) find that Robertson acted dishonestly:
(a) by failing to disclose that he drafted filings
for Connolly,
(b) by drafting filings purportedly filed by
Connolly in which Robertson was falsely cast as
Connolly's adversary, and
(c) by filing papers that by use of an electronic
facsimile of Connolly's signature, falsely represented
that Connolly had read and signed the papers, and was
filing the papers.

(4) find that Robertson engaged in conduct that
seriously interfered with the administration of justice by
ghostwriting frivolous filings for Connolly in order to keep
this W.A.R., LLP Chapter 7 bankruptcy case alive so he could
argue to other courts that the automatic stay had been
violated;

(5) find that Robertson made false statements of law that
the automatic stay applied to the civil action between
Cartinhour and Robertson in the District Court;

(6) report these findings to:
(a) the District of Columbia Court of Appeals
Committee on Unauthorized Practice of Law; and

57

(b) the disciplinary unit of each court or
jurisdiction in which Wade A. Robertson is a member of
the bar;

(7) report these findings to the District Court of this
district with a recommendation that it bar Robertson from:
(a) becoming a member of the bar of the District
Court,
(b) filing papers as an attorney pursuant to D. Ct.
LCvR 83.2(c)(1), by joining of record a member in good
standing of the bar of the District Court;
(c) appearing in proceedings, without being a member
of the bar of the District Court, pursuant to D. Ct. LCvR
83.2(d), (e), (f), or (g); and
(d) filing or drafting filings on behalf of anyone
other than himself in the District Court or this court.

(8) find that by reason of findings (1) through (5)
above, Robertson violated Federal Rule of Bankruptcy Procedure
9011 and impose appropriate sanctions against him under Rule
9011(c)(2), including enjoining him from filing or drafting
filings on behalf of anyone other than himself in this court;
and

(9) find that by reason of findings (1) through (5) set
forth above, the court, pursuant to its inherent authority,
should enjoin Robertson from filing or drafting filings on
behalf of anyone other than himself in this court, and enter
such an order.


A.

Robertson's Ghostwriting on Behalf of Connolly
to Advance Frivolous Arguments Improperly Misled the
Court and Violated the D.C. Rules of Professional Conduct

Ghostwriting, or when an attorney helps a *pro se* litigant to

prepare written submissions without disclosing the fact, nature,

or extent of such assistance to the court, is not a prohibited

practice in the District of Columbia.  *See* D.C. Bar Op. 330,

Unbundling Legal Services.  Although "[t]he D.C. Rules of

Professional Conduct do not articulate any requirement that
attorneys must identify themselves to the court if they provide
assistance to a *pro se* litigant in the preparation of documents
to be filed in court, [] attorneys who provide such assistance to
*pro se* litigants should check whether any other source of law in
the relevant jurisdiction imposes a disclosure requirement."
D.C. Bar Op. 330.  The fact that an attorney ghostwrites papers
does not excuse him from his obligation to otherwise adhere to
the Rules of Professional Conduct.  In the instant proceeding,
Robertson's undisclosed representation of Connolly misled the
court and violated the Rules of Professional Conduct, and he
ought to be sanctioned accordingly.

Violations of the Rules of Professional Conduct, as adopted
by the District of Columbia Court of Appeals, may constitute
grounds for discipline under the disciplinary procedures
established by the District Court Local Rules.  Under LBR 2090-
1(b)(6), DCtLCvR 83.15(a) (the Local District Court Rule making
the D.C. Rules of Professional Conduct applicable in the district
court) applies to attorneys practicing in this bankruptcy court.
Local District Court Civil Rule 83.12, which sets forth the rules
of disciplinary enforcement in the district court, however,
provides that the district court's disciplinary rules apply to
"[a]ll attorneys who appear before this Court or who participate
in proceedings, whether admitted or not."  The court is uncertain

59

whether Robertson's ghostwriting on Connolly's behalf constitutes participation within the meaning of LCvR 83.12.  I will nevertheless submit a copy of this decision to the District Court Disciplinary Committee, allowing it an opportunity independently to consider whether Robertson's conduct falls within the Committee's jurisdiction, and if so, what, if any, disciplinary action is warranted.  Likewise, this court fully intends to exercise its inherent authority to refer this matter to the D.C. Office of Bar Counsel and the State Bar of California.

(1)   Robertson Violated Rule 1.7 of the D.C. Rules of Professional Conduct

Robertson's drafting of papers on behalf of Connolly in a supposed attempt to help Connolly recover assets from the partnership gave rise to an attorney-client relationship, and the mere fact that Robertson did not enter a formal appearance on Connolly's behalf did not abrogate Robertson's duties to his client and did not relieve him of the obligation to comply with the D.C. Rules of Professional Conduct.  Rule 1.7(a) of the D.C. Rules of Professional Conduct provides that "a lawyer shall not advance two or more adverse positions in the same matter."  The Comment to Rule 1.7(a) goes on to explain:

> Institutional interests in preserving confidence in the adversary process and in the administration of justice preclude permitting a lawyer to represent adverse positions in the same matter.  For that reason, [Rule 1.7(a)] prohibits such conflicting representations, with or without client consent.

A Rule 1.7(a) conflict cannot be waived and cannot be overcome

through informed consent.[24]   Here, Robertson drafted Connolly's

papers, casting himself as an adversarial target of those papers,

and then, on his own behalf, Robertson filed a response

expressing indignation and outrage at the allegations asserted

against him in Connolly's papers, which Robertson himself

drafted.[25]

Particularly troubling for purposes of Rule 1.7 is that

Connolly's position was not simply adverse to that of a second

client being represented by Robertson in these proceedings;

rather, it was adverse to Robertson himself, who was a

participant in and had a direct personal interest in the outcome

of these proceedings beyond that of a mere creditor.   Robertson

is the controlling partner of the debtor and part of his

litigation strategy in other courts depended on the pendency of

this bankruptcy case.   These circumstances gave rise to a non-

waivable conflict of interest barring Robertson from representing

Connolly in these proceedings.

---

[24]   Even if the conflict inherent in Robertson's
representation of Connolly, his adversary in this proceeding,
were somehow waivable under Rule 1.7(b), the record reflects that
Connolly never provided informed consent to such representation
and was not given full disclosure of the existence and nature of
the possible conflict and the possible adverse consequences of
such representation, as would be required under Rule 1.7(c)(1).

[25]   Comment 6 to Rule 1.7(a) states that there is a limited
exception to this rule "[i]f no actual conflict of positions
exists."   According to Connolly's affidavit filed with his
supplemental response in opposition to the court's show cause
order (Dkt. No. 265), his relationship with Robertson was and is
adversarial.

In order to excuse his conduct, Robertson points to D.C. Bar
Opinion 330, which provides that ghostwriting does not, in and of
itself, violate the D.C. Rules of Professional Conduct.  The
first paragraph of Opinion 330, however, clearly states that with
respect to the provision of unbundled legal services, "[n]ot only
the duty of competence, but all the duties that generally attach
to lawyer-client relationships will apply to such arrangements,
including diligence, loyalty, communication, confidentiality and
avoidance of conflicts of interest."  Nothing in Opinion 330
purports to abrogate the broadly applicable Rules of Professional
Conduct, and given the clear and unambiguous language of Opinion
330, Robertson's reliance on that opinion to excuse his disregard
for the Rules of Professional Conduct as they relate to conflicts
of interest was not justified.

Robertson's response to the court's order to show cause
together with his testimony reflect a fundamental
misunderstanding of conflicts arising under Rule 1.7.  According
to Robertson, it is enough that "the Court was apprised of the
adversarial differences between Connolly's position, as reflected
in his pleadings, and the undersigned's position in this
bankruptcy case. . . . [T]he Court was informed that the
undersigned and Connolly were adversarial with respect to these
competing interests in this bankruptcy case."  The critical
issue is not whether the court was aware that Connolly and
Robertson were adversaries.  Instead, the issue is whether it is

62

ever appropriate for an attorney to represent his own interests
and that of his direct adversary in the same proceeding, and
whether such conflicting representation can ever be free from the
risk that the client's interests will be subordinated to the
interests of the attorney.

As already discussed, this type of representation presents
an unwaivable conflict of interest and it violates the rule
prohibiting attorneys from advancing two adverse positions in the
same proceeding. *See* Rule 1.7. Whether in a bundled or
unbundled capacity, this type of representation is impermissible.
How, possibly, can Robertson claim zealously to advocate for both
sides, especially when he has a direct personal stake in the
outcome of the dispute? To the extent Connolly had legitimate
grounds for insisting on a Rule 2004 examination of Robertson
(setting aside for the moment Connolly's lack of creditor
standing), does the court really expect that Robertson would
strive to make Connolly's argument more persuasive than his own
defense? Robertson owed a duty to his client, yet his self-
interest in the outcome of this bankruptcy case and related
litigation against Cartinhour made it virtually impossible for
Robertson to be an objective and zealous advocate on behalf of
Connolly. An attorney who knowingly enters into an attorney-
client relationship with and takes on representation of his
adversary in this fashion, runs afoul of the Rules of

Professional Conduct, and Robertson's characterization of his services as "unbundled" does not alter that result.

Even if Connolly had not targeted Robertson in his papers and had not taken a directly adversarial position with respect to Robertson, Robertson has a direct personal stake in the outcome of this bankruptcy case, especially given how extensively he has relied on its significance in other courts. Thus, Robertson's representation of Connolly in this proceeding at the very least gave rise to a conflict under Rule 1.7(b)(4), which provides that unless the necessary waivers and disclosures are made,

> A lawyer shall not represent a client with respect to a matter if [t]he lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interest.

Robertson never sought to obtain a waiver from Connolly, and thus even if the conflict were waivable, Robertson violated the Rules of Professional Conduct by advising Connolly in this case.[26]

The foregoing is enough to conclude that Robertson violated Rule 1.7 of the D.C. Rules of Professional Conduct. Additionally

---

[26] Connolly, through Robertson's ghostwriting, took positions that violated Rule 9011 and ended up costing Connolly $1,000 (paid to Cartinhour), and necessitated Connolly's pursuing hiring of a separate attorney to represent him in response to the court's order to show cause (Robertson testified that he paid for Connolly's new attorney), and traveling to this court from New York, New York, for a hearing. Thus, the risks associated with potential and actual conflicts were not merely academic or theoretical in this case, and had actual financial repercussions for Connolly.

troubling in regard to Rule 1.7 is that Connolly is not even a

creditor of the estate and lacked standing to pursue the relief

sought in his various filings prepared by Robertson (which

Connolly, through Richard Gins, his later counsel of record, has

since withdrawn).[27]   That Connolly was not a creditor is

something a reasonable inquiry by a competent attorney would have

revealed.   Thus, not only did Robertson surreptitiously advise

and assist a client with interests (ostensibly) adverse to his

own and with respect to a matter as to which Robertson had a

direct personal interest, Robertson failed to make the necessary

inquiry to verify Connolly's creditor status.   Having Connolly,

as a purported creditor, stir up more litigation helped to

prolong the life of this case, Robertson's desired result.   That

may explain why Robertson failed to make the necessary inquiry to

---

[27]   Connolly's amended proof of claim in this case asserts a
claim in the amount of $44,820.00 based upon services performed
on or before March 2010.   As noted previously, on September 8,
2010, Connolly filed a voluntary petition for relief under
Chapter 7 of the Bankruptcy Code (11 U.S.C.) in the U.S.
Bankruptcy Court for the Southern District of New York (Case No.
10-14769).   That case was closed on January 11, 2011.   Connolly
having failed to schedule his alleged claim against W.A.R. LLP in
his own personal bankruptcy case, that claim remained property of
his bankruptcy estate and cannot here be asserted by Connolly.

confirm Connolly's creditor status.[28]  This brings us full-circle

to the inherent conflict in Robertson's advising Connolly in

these proceedings, and highlights that Robertson's advice to

Connolly was colored by his own litigation agenda against

Cartinhour.[29]

> (2) Robertson's Ghostwriting on Behalf of Connolly Violated
> Rule 3.3 of the D.C. Rules of Professional Conduct,
> Candor to the Tribunal, and Constitutes Professional
> Misconduct Within the Meaning of Rule 8.4

The court finds that by ghostwriting Connolly's papers,

Robertson violated Rule 3.3(a)(1) of the D.C. Rules of

---

[28]  Robertson and Connolly were friends, and Robertson may
well have known that Connolly had gone through a bankruptcy case.
If Robertson knew or became aware that Connolly, who could not
afford counsel, had just gone through a bankruptcy case, one
could well conclude that, in filing papers for Connolly, or
keeping them on file, Robertson deliberately turned a blind eye
to the issue of Connolly's creditor status, and thereby
deliberately acted contrary to the interests of Connolly (whose
interests included not asserting a claim that Connolly did not
hold).

[29]  In one filing, Robertson contends that there is no
conflict between Robertson and Connolly "[b]ecause Robertson is a
creditor, [and] his interests are aligned with all the other
creditors, including Connolly, who seek to recover from the
assets of the bankruptcy estate."  Robertson's Objection and
Response in Opposition to Cartinhour's Motion for Sanctions (Dkt.
No. 249) at 15.  Even if there was an actual or perceived
alignment of interest based upon Connolly's purported creditor
status, Robertson also had interests that differed from Connolly
insofar as he was engaged in contentious high-stakes litigation
with Cartinhour in other courts, and owed money to the debtor.
Moreover, Robertson concedes that he and Connolly are, in at
least some respects, adversaries (as evidenced by the filing of a
motion to require Robertson to appear at a 2004 examination and
Robertson's opposition).  The fact that there may have been some
perceived overlapping of interests based on Connolly's supposed
creditor status does not remove the actual or potential conflict.

Professional Conduct,[30] Candor to the Tribunal, and Rule 8.4(c),

Misconduct, because he misled the court to believe that a party

independent from and adverse to Robertson was pursuing the relief

sought in Connolly's filings.  Given Robertson's relationship to

the debtor and his direct stake in the outcome of these

proceedings, he was ethically bound to refrain from representing

third party creditors in this bankruptcy case.  The conflict

inherent in such representation was clear on its face, and when

reviewing papers, this court was entitled to assume that

Robertson was not drafting Connolly's papers.  Robertson created

the false appearance that a creditor independent of Robertson was

opposing the trustee's report of no distribution, and this misled

the court.  Similarly, by ghostwriting papers on behalf of an

adversary that included accusations against himself, and then

filing a response to those accusations, Robertson fostered and

encouraged the illusion that Connolly's filings were being

pursued by a party independent of and adversarial to Robertson.

As already noted, one example of Robertson's misleading

portrayal of Connolly as an independent creditor adversarial to

Robertson can be found in Connolly's omnibus memorandum filed in

support of several papers, including a motion for an order

directing Cartinhour and Robertson to appear for a Rule 2004

---

[30]   Comment 2 to Rule 3.3 of the D.C. Rules of Professional
Conduct notes that "[t]here may be circumstances where failure to
make a disclosure is the equivalent of an affirmative
misrepresentation."

examination (Dkt. No. 125).  In that memorandum, drafted by

Robertson, Connolly makes the following statements with respect

to Robertson:

- Cartinhour and Robertson have done everything they can to hinder, harass and delay the creditors.  There is no justifiable excuse for Robertson's belatedly disclosing more than $630,000 in cash assets of the debtor *after* the creditor's meeting and *after* the trustee's report of no distribution. Omni. Mem. at 2.

- It is despicable for Cartinhour and Robertson to slander, harass, and obstruct their creditors for pursuing claims in this bankruptcy case when, in fact, the creditors were lulled by them to believe that if they would be patient they would eventually get paid.  *Id.* at 3.

- Thus, the only reasonable conclusion is that Cartinhour and Robertson surely know exactly what they are doing, and that by pillaging and dissolving their partnership before settling up with creditors, they are essentially making out like bandits.  *Id.* at 3.

- [N]either Robertson nor Cartinhour has complied with the bankruptcy laws.  *Id.* at 3.

- Rather than facilitating this case, Robertson's obfuscation and delay has resulted in a mess where the creditors now have to file objections to the discharge, move the trustee to investigate the debtor, and request a Rule 2004 examination.  Robertson's delay served only to harass the creditors in pursuing their claims in this case, and it looks suspiciously intentional.  Whether Robertson's actions were intentional or collusively carried out with Cartinhour is something that should be explored fully at the Rule 2004 examination.  *Id.* at 4.

- Respectfully, this bankruptcy court needs to send a strong message that its authority, and the law demands respect and obedience.  *Id.* at 11.

Robertson filed an opposition to the motion for Rule 2004

examination, stating as follows:

- To suggest as Mr. Connolly does that Roberson [sic] is in cahoots with William "Bill" Cartinhour, Jr. is not only untrue, it is unfair.

- Respectfully, for these reasons Robertson request the Court to deny Mr. Connolly's request to have Robertson submit to a Rule 2004 examination.

By drafting Connolly's motion for Rule 2004 exam and related omnibus memorandum, Robertson caused the arguments contained in those papers to be advanced in this litigation.  Robertson then, as if he were a true adversary to Connolly, turned around and asked that the relief not be granted, accusing Connolly of making false accusations in his omnibus memorandum, a document that Robertson himself drafted.  Either Robertson thought the omnibus memorandum was truthful or he did not.  If he thought the allegations contained in the omnibus memorandum were dishonest, he should not have assisted Connolly in preparing the document; if he thought the document presented an honest recitation of facts, he should not have filed an opposition saying it was untruthful.[31]  Either way, the whole exchange is misleading and it is dishonest.

The court finds that Robertson's ghostwriting of Connolly's papers and his misleading portrayal of Connolly as an independent and adversarial creditor violated Rule 3.3(a)(1), which prohibits lawyers from knowingly making false statements to the court.  The

---

[31]  A more fundamental problem with the Connolly's papers, of course, is that they are based on the entirely frivolous argument that the registry funds are an asset of the estate.

court further finds that through the ghostwriting of Connolly's papers in this proceeding, Robertson committed professional misconduct within the meaning of Rule 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

In addition to the misleading portrayal of Connolly, Robertson also caused to be filed papers that purport to be signed by Connolly notwithstanding Robertson's knowledge that Connolly had neither seen nor reviewed the filings prior to filing. The court finds that, in doing so, Robertson falsely represented to the court that Connolly had seen and signed these papers before they were filed. Making false representations is dishonest and misleading conduct and constitutes a further violation of D.C. Rule of Professional Conduct 3.3(a)(1) and constitutes professional misconduct under Rule 8.4(c).[32]

    (3)  Robertson's Conduct Does Not Violate Rule 5.5 of the Rules of Professional Conduct

The court concludes that Robertson's actions did not constitute the unauthorized practice of law under Rule 5.5 of the Rules of Professional Conduct. The district court rules do not expressly prohibit ghostwriting, and do not specifically require admission into the district court bar as a prerequisite to

---

[32]  At the hearing, Connolly testified that he did not read the papers before they were filed. The court finds Connolly's testimony on this point credible, and rejects an earlier affidavit in which Connolly makes a statement to the contrary.

ghostwriting on behalf of *pro se* litigants.[33]   Although

Robertson's ghostwriting was objectionable for many reasons, he

is licensed to practice in the District of Columbia.

Accordingly, his representation of Connolly in this jurisdiction

did not constitute the unauthorized practice of law.

B.

28 U.S.C. § 1927 Does not Apply but the Court Will
Impose Sanctions Under its Inherent Powers and 11 U.S.C. § 105

The court concludes that Robertson's conduct is beyond the

reach of 28 U.S.C. § 1927 because Robertson is not admitted to

the bar of the district court of which this court is a unit, and

he never entered a formal appearance in this proceeding, acting

instead as a *pro se* litigant and a non-appearing ghostwriter.

The court likewise will not impose Rule 9011 sanctions against

---

[33]   At the show cause hearing, Cartinhour's attorney argued
that notwithstanding Opinion 330, undisclosed ghostwriting by an
attorney who is not a member of the district court bar is not
permitted.  He reasoned that LCvR 83.2(g) requires that "an
attorney who is a member in good standing of the District of
Columbia Bar or who is a member in good standing of the bar of
any United States Court or of the highest court of any State may
appear, file papers and practice in any case handled without a
fee on behalf of indigents upon filing a certificate that the
attorney is providing representation without compensation."
Thus, Cartinhour's attorney reasons, if an attorney who is not a
member of the district court bar wishes to provide *pro bono*
services, the district court requires the filing of a certificate
to that effect.  The Comment to this local rule, however,
explains that it is intended "to make clear that attorneys can
represent parties *pro bono* without being approved by the Court."
Rather than a limitation on ghostwriting, the court reads this
rule as merely authorizing *pro bono* attorneys to bypass the
conventional *pro hac vice* admission procedures if they are not
admitted to the district court bar but nevertheless wish to
appear in the case.

Robertson pursuant to Cartinhour's motion for sanctions because Cartinhour failed to comply with Rule 9011's safe harbor provision by giving Robertson 21 days to withdraw any offending papers.  Similarly, Rule 9011 sanctions with respect to Robertson's filings for Connolly are likely unavailable under the court's show cause order because Robertson never entered his appearance on behalf of Connolly.[34]  *But see Thornton v. Acme Steel Co.*, 1989 WL 88497 *5 (N.D. Ill. Aug. 3, 1989) ("The better view, we believe, is that Rule 11 sanctions may be imposed on an attorney who participates in the preparation of a sanctionable filing, but who does not sign the filing.  It is a fundamental legal principle that a person is equally accountable for acts actually performed by him or her and acts which he or she causes others to perform.").

Although sanctions are not available under 28 U.S.C. § 1927 or Rule 9011, the court may nevertheless "resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct . . . ."  *Chambers v. NASCO, Inc.*, 501, U.S. 32, 50 (1991); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S.

---

[34]  Robertson has a history of not entering his appearance in cases in which he participates, to wit, according to the transcript of a January 11, 2010 hearing in front of Judge Huvelle, Robertson spent 7,714 hours working on a case in New York, yet never went to court or entered an appearance in the case.  In that hearing, Robertson explained that the specific reason he did not enter an appearance was confidential, but he notes that one reason for not formally entering an appearance on behalf of the plaintiffs was because he is a former employee of Credit Suisse, one of the defendants.

240, 258-59 (1975) (within the court's inherent power to assess
attorney's fees against party who acts "in bad faith,
vexatiously, wantonly, or for oppressive reasons."); *Jones v.
Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.*), 40 F.3d 1084,
1089 (10th Cir. 1994) (under 11 U.S.C. § 105, bankruptcy courts
have the inherent power recognized in *Chambers v. NASCO* to impose
attorney's fees as a sanction for bad-faith conduct).  "The
court's inherent authority to sanction includes not only the
authority to sanction a party, but also the authority to sanction
the conduct of a nonparty who participates in abusive litigation
practices, or whose actions or omissions cause the parties to
incur additional expenses."  *In re Avon Townhomes Venture*, 433
B.R. 269, 304 (Bankr. N.D. Cal. 2010) (citing *Chambers v. NASCO,
Inc.*, 501 U.S. 32, 50-51 (1991)).  "[B]ad faith can be proven
directly through evidence of subjective intent, or indirectly
through evidence of objective actions that lead to an inference
of subjective intent - such as filing a document with the court
that is plainly frivolous, lacking even a colorable basis in law
or fact."  *In re Greater Se. Cmty. Hosp. Corp.*, I, 2010 WL
3123086 *3 (Bankr. D.D.C. Aug. 9, 2010), citing *United Steel v.
Shell Oil Co.*, 549 F.3d 1204, 1209 (9th Cir. 2008), *Primus Auto
Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997),
*Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

Because the imposition of attorney's fees is considered

73

punitive in nature, however, the court "must find clear and
convincing evidence of the predicate misconduct" before imposing
such a sanction pursuant to its inherent powers. *Shepherd v. Am.
Broadcasting Cos.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995), quoted in
*D'Onofrio v. SFX Sports Group, Inc.*, 2010 WL 3324964, at *6
(D.D.C. Aug. 24, 2010); *In re Papst Licensing GmbH & Co.*, 791 F.
Supp.2d 175, 184 (D.D.C. 2011) (1927 sanctions require finding of
vexatiousness or misconduct supported by clear and convincing
evidence); *Alexander v. F.B.I.*, 541 F. Supp.2d 274, 303 (D.D.C.
2008).

By preparing filings for Connolly, whom he was ethically
barred from representing, Robertson acted to advance his larger
litigation strategy of delaying Cartinhour in his rights and
causing Cartinhour undue litigation expense. The evidence is
clear and convincing that Robertson intentionally misrepresented
to other tribunals the significance of these proceedings and the
impact of the bankruptcy stay (specifically, in the Southern
District of New York and the D.C. District Court) as part of his

larger litigation strategy against Cartinhour.[35]  He has
repeatedly argued in other courts that the stay arising in this
case has dispositive significance with respect to Cartinhour's
claims in the D.C. District Court litigation, in direct
contradiction to several early rulings in both the bankruptcy
court and by Judge Huvelle, and the only inference that can be
drawn based upon the ample record in this case is that Robertson
has done so purely for strategic reasons and with complete
disregard for the merits of his patently frivolous arguments.
Likewise, the evidence is clear and convincing that Robertson's
motivation for continuing to advance frivolous arguments in this
court on behalf of Connolly was to cause unnecessary expense to
his opponent, Cartinhour, and to keep the case pending such that
Robertson would have the continued ability to advance frivolous
arguments relating to the bankruptcy stay in another tribunal.
This constitutes bad faith in the extreme and is a basis for
imposing sanctions against Robertson under the court's inherent

---

[35]  For example, as noted previously, on April 28, 2011,
Robertson, through his attorney Clevenger, filed a brief in the
Southern District of New York in which he makes the incredible
argument that the D.C. judgment is *void ab initio* because the
D.C. action offended the bankruptcy court's jurisdiction.
Robertson accused Cartinhour of having used deceit to obtain
partial relief from the stay, and made the now all-too familiar
representation that the registry funds are an asset of the
estate, and that by looking to the registry funds to satisfy the
judgment against Robertson, "Cartinhour is still trying to bypass
the bankruptcy court to get his hands on the funds in the
registry of the D.C. court" at the expense of other creditors.
*Robertson v. Cartinhour*, Case No. 10-cv-8442 (S.D.N.Y.) (Dkt. No.
53, filed April 28, 2011).

powers.[36]  *See Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001);

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

Rarely has the court seen such an unrelenting pursuit of a

patently frivolous argument undertaken with such complete

indifference to the merits.  And never before has the court

witnessed such a bizarrely unethical strategy as that which

Robertson employed through the ghostwriting of Connolly's papers,

a strategy that caused an entirely unnecessary and exponential

growth of these proceedings, and which served no purpose other

than to needlessly delay the closing of this case and put

Cartinhour to the burden and expense of defending against another

round of meritless claims regarding the impact of the automatic

stay on Cartinhour's right to recover against Robertson.  The

court finds that there is clear and convincing evidence that

through the ghostwriting of Connolly's papers, Robertson has, in

bad faith, advanced legally frivolous arguments and vexatiously

multiplied proceedings as part of a campaign to frustrate

Cartinhour's ability to gain access to the registry funds and to

put him to the burden of unnecessary litigation.

Accordingly, in the exercise of its inherent powers, and its

---

[36]  I am fully aware that the court's power to sanction
Robertson is restricted to conduct occurring in this court, and I
am not sanctioning Robertson for the advancement of frivolous
arguments in other tribunals.  Rather, the improper purpose and
bad faith associated with Robertson's conduct in this case is
evidenced, in part, by the actions Robertson has taken in other
courts.

statutory authority under § 105, the court will sanction
Robertson by awarding Cartinhour all attorney's fees and expenses
incurred for time spent preparing, filing, or litigating any
response to any paper filed by or on behalf of Connolly following
the trustee's report of no distribution in this case.[37]  This
shall include attorney's fees incurred by Cartinhour in the
preparation of and prosecution of any motion for sanctions
addressing Robertson's conduct as it relates to Connolly, and it
shall also include attorney's fees incurred in the preparation of
filings relating to Cartinhour's ultimate settlement with
Connolly, which yielded the revelation of Robertson's previously
undisclosed involvement in the preparation and filing of
Connolly's papers.[38]

V

ORDER TO SHOW CAUSE WHY RULE 9011
SANCTIONS OUGHT NOT BE IMPOSED AGAINST RAY CONNOLLY

Connolly permitted Robertson to draft his papers in this
proceeding, including the omnibus memorandum.  In that filing,
Connolly accuses Robertson of hindering, harassing, and delaying
creditors.  He accuses Robertson of violating the bankruptcy

---

[37]  The court's order to show cause directed to Robertson
alone raised the issue of imposing sanctions based on the court's
inherent authority was addressed to the filings that Robertson
prepared for Connolly.  Accordingly, the sanctions imposed will
be limited to that misconduct.

[38]  The $1,000 recovered from Connolly, however, should be
set off against such fees.

laws.  He accuses Robertson of being in cahoots with Cartinhour.
If Connolly believed these statements to be true, the court
marvels that Connolly permitted Robertson to assist him with his
papers.  On the other hand, if Connolly did not believe these
statements to be true, Connolly's actions run afoul of Fed. R.
Bankr. P. 9011(b).

Although Connolly testified that he, in many cases, did not
read the papers before they were filed, he was aware that papers
were being filed on his behalf by Robertson and that they were
being filed without his prior review.  Passively allowing this is
not innocent conduct, and the court does not condone the
practice.  Even if Connolly authorized Robertson to affix his
signature to the documents that were filed, in which case Rule
9011 is clearly applicable to Connolly, the court will not impose
Rule 9011 sanctions against Connolly.  Connolly's hearing
testimony reflects genuine confusion with respect to the nature
and content of the arguments Robertson pressed on Connolly's
behalf.  To the extent the arguments were frivolous, the court
accepts Connolly's testimony that he relied on Robertson's
assurances that the filings were proper.  Connolly's testimony
also reflects that his objective was to recover on a claim, which
he was incorrectly led to believe he could pursue in this
bankruptcy case.  Although it was ultimately revealed that
Connolly does not have creditor status in this case, the court
found credible Connolly's testimony explaining that he did not

78

understand the implications his bankruptcy case had on his creditor status in this case, and that he did not have a larger agenda to harass Cartinhour or improperly frustrate Cartinhour's efforts to access the registry funds.  Connolly, who is of limited means, has already paid $1,000 to Cartinhour for his misconduct in this case, and has suffered the burden of traveling from New York to appear and testify in the hearing on sanctions. That is sufficient chastisement.  For all of these reasons, and although the court is not impressed with Connolly's conduct in these proceedings, the court does not think it appropriate to impose Rule 9011 sanctions against him.


VI

Orders follow.  This was a core proceeding in which the court's orders are reviewable only by way of appeal.  If the district court decides, to the contrary, that this had to be treated as a non-core proceeding, this Memorandum Decision constitutes the bankruptcy court's proposed findings of fact and conclusions of law under Fed. R. Bankr. P. 9033(a).

[Signed and dated above.]

Copies to: Recipients of e-notification of filings; Wade Robertson.