The document below is hereby signed.

Dated: September 25, 2012.



**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
W.A.R. LLP,                    )     Case No. 11-00044
                               )     (Chapter 7)
            Debtor.            )     Not for publication in
                               )     West's Bankruptcy Reporter.

MEMORANDUM DECISION ADDRESSING MOTIONS
OF TY CLEVENGER AND WADE A. ROBERTSON TO RECONSIDER
THE ORDERS IMPOSING A $10,000 SANCTION AGAINST EACH OF THEM

Wade A. Robertson and Ty Clevenger have filed motions

seeking relief from the court's *Order Imposing Rule 9011*

*Sanctions Against Wade A. Robertson*, directing Robertson to pay

to the clerk $10,000 as a sanction under Rule 9011, and the *Order*

*Imposing Rule 9011 Sanctions Against Ty Clevenger*, directing

Clevenger to pay to the clerk $10,000 as a sanction under Rule

9011.[1]  The motions will be granted in part by reducing the sanction to $5,000 each and by deferring the deadline to pay the $5,000.

I

This court issued an order directing Robertson and Clevenger to show cause:

> why the court ought not impose sanctions against them under Rule 9011 of the Federal Rules of Bankruptcy Procedure for pressing the frivolous argument that the bulk of the funds in the registry of the district court were property of the debtor's estate, and for doing so in an apparent effort to cause unnecessary delay in the enjoyment by William C. Cartinhour, Jr., of his right to those funds and to cause him an increase in the cost of litigation.

After a hearing, the court issued its *Memorandum Decision re Imposition of Sanctions Against Wade A. Robertson, Ty Clevenger, and Ray Connolly* (signed on May 3, 2012, and entered on May 4, 2012).  I will assume that the reader has familiarity with the portions of that *Memorandum Decision* that address imposing Rule 9011 sanctions against Robertson and Clevenger.  In summary, the court found:

---

[1]  Robertson's motion is titled *First Motion Pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023, & 9024 to Amend Findings, And/or Amend Judgment, And/or for New Hearing, and/or for Relief from Judgment of the Court's May 4, 2012 Memorandum and Orders* (Dkt. No. 280).  Clevenger represented the debtor in this case.  His motion is titled *Debtor's Motion Pursuant to Federal Rules of Bankruptcy Procedure 7052, 9023, & 9024 to Amend Findings, And/or Amend Judgment, And/or for New Hearing, And/or for Relief from Judgment of the Court's May 4, 2012 Memorandum and Orders* (Dkt. No. 286).

2

> Robertson's and Clevenger's complete disregard for the
> facts and law in advancing their frivolous argument
> generated a staggering amount of work for the court, and
> has put Cartinhour and his attorney to the unnecessary
> burden of defending against frivolous arguments in this
> and in other courts.  In order to deter similar conduct
> by Clevenger and Robertson in the future, and likewise to
> deter other attorneys from advancing frivolous arguments
> merely to keep a bankruptcy case pending or to cause
> unnecessary expense for an opponent, the court will
> impose monetary sanctions against Clevenger and Robertson
> in the amount of $10,000 each, payable to the clerk of
> the court.

*Mem. Dec.* at 56.  The court issued orders requiring that $10,000

be paid by each of them to the clerk within 21 days, but stayed

those orders when Robertson and Clevenger moved for

reconsideration.

The court also announced that with respect to Robertson's

filing papers on behalf of Ray Connolly, the court, pursuant to

its inherent powers, would award to Cartinhour his attorney's

fees arising from that misconduct.  In imposing Rule 9011

sanctions against Robertson and Clevenger for pressing their

frivolous argument regarding ownership of the funds at issue, the

court has been careful to distinguish between, on the one hand,

the Connolly filings, and, on the other hand, the filings

Clevenger made for the debtor and the filings that Robertson

filed or signed on his own behalf.  It was only with respect to

the latter misconduct that the court imposed the Rule 9011

sanctions.

II

Clevenger raises two preliminary arguments that I readily
reject.

A.

The court imposed sanctions for Clevenger's asserting
ownership by the debtor of the funds at issue,[2] when it was clear
that the debtor had long ago ceased to be the owner of the funds
by lending them to Robertson.  Moreover, Clevenger's filings for
which sanctions are being imposed were made *after* the district
court had entered its judgment of February 25, 2011, imposing an
equitable trust upon those funds in favor of Cartinhour (who had

---

[2]   The funds at issue do not include $4,611.66 in the court
registry that came from W.A.R. LLP's Citibank account, and
against which Cartinhour was *not* proceeding because of the
automatic stay.  Instead, the funds at issue were the remaining
funds in the registry of the district court (constituting the
bulk of funds in the registry of the district court), funds that
Robertson owned.

been W.A.R. LLP's original source of the funds).[3]

In seeking reconsideration, Clevenger contends, first, that

he "argued in absolute good faith that the Debtor had a

legitimate claim to the funds being held in *custodia legis* in

*Robertson v. Cartinhour*, Case No. 1:09-cv-1642-ESH (D.D.C.)."  He

premises this on an argument that only W.A.R. LLP, as the

affected partnership, had a right to sue Robertson for breach of

fiduciary duty and to obtain a disgorgement of the funds that had

been lent to him.  That argument might have furnished grounds for

Robertson to seek a dismissal of Cartinhour's district court

action, but the argument was not raised in the district court,

which entered its judgment long after the bankruptcy automatic

stay had been lifted to permit the district court litigation to

---

[3]  It was after entry of the district court's judgment that
Clevenger filed:

- on April 4, 2011, the debtor's Schedule B;
- on April 25, 2012, the debtor's objection to the
  trustee's report of no distribution; and
- on May 18, 2011, the debtor's supplemental objection to
  the trustee's report of no distribution.

Each of these asserted that the funds are property of W.A.R. LLP.
For example, the supplemental objection stated "The $630,400.33
of cash in the registry of the D.C. district court was (and is)
all property of the Debtor's estate;" accused Cartinhour's
attorney of falsely telling the trustee on March 25, 2011, that
"[n]one of the deposits into the Registry of the Court with the
exception of $4,611.66 are property of the Estate;" and contended
that "Cartinhour's equitable trust was apparently obtained in
violation of the bankruptcy stay."  The automatic stay had been
lifted, permitting Cartinhour to obtain his judgment imposing an
equitable trust on the funds at issue.

go forward.  Clevenger's argument does not affect who had present
ownership of the funds at issue when he made the filings at
issue.

Nor does Clevenger's argument that only the partnership
could sue for a breach of fiduciary duty alter the fact that the
funds, as Robertson's funds, were being held in *custodia legis*
for the benefit of Cartinhour as the party seeking relief against
Robertson.[4]

In summary, Clevenger's argument does not change the fact
that at all relevant times when Clevenger's improper filings were
made in the bankruptcy case:

- W.A.R. LLP had lost ownership of the funds at issue
  once it lent them to Robertson;

- the funds had become Robertson's upon their being lent

---

[4]  As I explained in the *Memorandum Decision* at 47-48:

To the extent there is legal support for the contention
that Cartinhour was not permitted to pursue his claims in
the district court, that states grounds for a Rule
12(b)(6) motion to dismiss in the district court, not a
basis for altering the entity for whose benefit the funds
in the district court registry were being held.  The
partnership was never a party to and never intervened in
the district court litigation, Cartinhour remained the
counterplaintiff at all times, and the derivative and
accounting claims were abandoned for the very reason that
Cartinhour was taking all precautions necessary to avoid
a violation of the automatic stay.  For Clevenger and
Robertson nevertheless to claim that they had a good
faith basis for believing that the registry funds were
being held *in custodia legis* for the benefit of the
partnership is incredible.

6

to him, and W.A.R. LLP had not obtained any order

changing that ownership;

• the funds were being held in the court registry for the

benefit of Cartinhour, not W.A.R. LLP; and

• the funds were subject to an equitable trust imposed by

a final judgment of the district court in favor of

Cartinhour.

My finding that Clevenger proceeded in bad faith is fully

explained by the *Memorandum Decision* at 4-22, 27 n.9, 35-52, and

54 n.23.[5]  To add insult to injury, Clevenger then opposed the

imposition of sanctions by pointing to a decision, *In re Don/Mark

Partnership*, 14 B.R. 830 (D. Colo. 1981), as supporting his

assertion that the debtor owned the funds, when *In re Don/Mark

Partnership* plainly did not suffice to show that his argument of

ownership was "warranted by existing law or by a nonfrivolous

argument for the extension, modification, or reversal of existing

law or the establishment of new law" as required by Rule

9011(b)(2).

  *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478 (D.C. Cir.

1995), requires a finding of bad faith based on clear and

---

[5]  For example, keeping the bankruptcy case alive served
Clevenger's and Robertson's goal of sowing procedural confusion
by making the erroneous argument in two other forums--the United
States District Courts for the Western District of Tennessee and
for the Southern District of New York--that a violation of the
automatic stay had occurred.  See *Memorandum Decision* at 35-38.

convincing evidence before the court may impose sanctions
pursuant to its inherent power. *See also Ali v. Tolbert*, 636
F.3d 622, 627 (D.C. Cir. 2011).   The sanctions here are being
imposed under Rule 9011, and I need not decide whether the same
standard applies, or, whether, instead, a standard of the
preponderance of evidence applies.   All of my findings regarding
Robertson's and Clevenger's bad faith in my *Memorandum Decision*
of May 3, 2012, rested on an application of the standard of clear
and convincing evidence, and I have applied that same standard in
rejecting Clevenger's motion's attempts to demonstrate good
faith.

B.

Clevenger also argues that the $10,000 sanction (apparently
even if he has the ability to pay a $10,000 sanction) "is clearly
punitive, and on par with a finding of contempt or conviction of
a felony."   A criminal contempt fine is intended as a punishment,
would require utilization of criminal contempt procedures, and
would be beyond this bankruptcy court's authority to adjudicate,
as only civil bankruptcy proceedings may be referred to the
bankruptcy court.   The court's order, however, is being entered
as a Rule 11 or Rule 9011 sanction for deterrence purposes, not
as a punishment, and is being entered pursuant to the standards
and procedures applicable to Rule 11 and Rule 9011 sanctions.
The $10,000 amount was deemed to be the least severe sanction

8

adequate to deter Clevenger *and* to deter others from engaging in similar misconduct in the future, and was not intended as punishment. *See In re Letourneau*, 422 B.R. 132 (Bankr. N.D. Ill. 2010). The $10,000 sanction was not a criminal contempt fine. *See Miller v. Cardinale (In re DeVille)*, 361 F.3d 539 (9th Cir. 2004) (holding that a bankruptcy court's imposition of a monetary Rule 9011 sanction payable to clerk was not the equivalent of a criminal contempt proceeding); *Eisenberg v. Univ. of New Mexico*, 936 F.2d 1131, 1137 (10th Cir. 1991) (same under Rule 11); *Donaldson v. Clark*, 819 F.2d 1551, 1558 (11th Cir. 1987) (same); *Wayland v. McVay (In re Tbyrd Enters., LLC.)*, 354 Fed. Appx. 837, 839 (5th Cir. 2009) (stating that "there is no legal basis for equating" Rule 9011 sanctions and criminal contempt sanctions); *In re Yehud-Monosson USA, Inc.*, 472 B.R. 795, 803 (D. Minn. 2012).

## III

Both Robertson and Clevenger invoke inability to pay their respective $10,000 awards. Robertson and Clevenger failed to raise the defense of inability to pay when they responded to the court's order to show cause and participated in the hearing on the order to show cause. They arguably have waived the defense. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990) ("Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to

an affirmative defense, with the burden upon the parties being
sanctioned to come forward with evidence of their financial
status."); *Multiserv. Joint Venture, LLC v. United States*, 374 F.
App'x 963, 967 (Fed. Cir. 2010) ("The [trial] court found that
she waived this argument when she failed to raise it as a
mitigating factor in response to the government's application for
attorney fees and costs.  We agree.").

The court's order to show cause did not specify any amount
of a sanction that the court was contemplating imposing, but only
required Robertson and Clevenger to show cause why the court
ought not impose Rule 9011 sanctions against them.  They might
argue that the order to show cause was but the first step towards
imposing sanctions, namely, the step of determining that Rule
9011 had been violated, with a second step of fixing the
appropriate sanction to follow once the court declared that Rule
9011 was violated.  That view of the order to show cause is
inappropriate because Rule 9011(c) contemplates that the court
may "impose an appropriate sanction" after issuing an order to
show cause why the attorney or party has violated Rule 9011(b).
If Robertson's and Clevenger's financial circumstances made them
unable to pay anything but a modest fine, they should have raised
that defense in response to the order to show cause.
Necessarily, the hearing addressing whether Rule 9011(b) was
violated considers the severity of the violation and the presence

of any bad faith in making the filing, all of which are pertinent to the appropriate sanction to impose, and it would make no sense to address those issues (and the issue of inability to pay any sanction beyond a modest amount) only in a later hearing.

Nevertheless, Robertson's and Clevenger's motions are timely under Fed. R. Civ. P. 59, and in the exercise of my discretion, I will take into account the issue of inability to pay.

IV

For purposes of this case, Fed. R. Civ. P. 11 and its bankruptcy analog, Fed. R. Bankr. P. 9011, are essentially identical (with differences of no relevance here).  Rule 9011 must be viewed like Rule 11 as "aimed at curbing abuses of the judicial system." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990).  More specifically, "the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Id*. at 393 (citation omitted).[6]  The 1993 amendments to Rule 11 (and the ensuing 1997 amendments to Rule 9011) emphasized this point in expressly limiting sanctions to their deterrence

---

[6] There is no danger here of inappropriately chilling vigorous advocacy as the conduct at issue was undertaken in bad faith.  "Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. at 393.

11

purpose. Rule 9011(c)(2), in language essentially the same as in Rule 11(c)(4), now provide that a Rule 9011 sanction "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."

Even before the 1993 amendments to Rule 11, the courts recognized that because the purpose of Rule 11 and Rule 9011 is deterrence, one factor to consider in imposing a sanction is the sanctioned party's ability to pay. *Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 46 (D.C. Cir. 1990). The Advisory Committee Note to the 1993 amendments to Rule 11 embraced inability to pay as one of several relevant factors, stating:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations. The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanction should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.

However, ability to pay is not decisive regarding the amount that is adequate to serve as a deterrent. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1125 n.4 (9th Cir. 2002) ( "The Advisory

Committee's notes concerning the [1993] amendments [to Rule 11]
indicate that an attorney's financial wherewithal is only one of
several factors that a district court may consider in deciding
the amount of sanctions . . . .  Nothing in Rule 11 mandates a
specific weighing of this factor, however.").  Moreover, the
majority of decisions dealing with the issue of inability to pay
have arisen in the context of a sanction of awarding the
attorney's fees incurred by the offending attorney's opponent
where those fees can be quite high.  Here, the sanction of
$10,000 is modest in comparison to the fees incurred by
Cartinhour and the burdens imposed upon the court in dealing with
Robertson's and Clevenger's frivolous papers.

Financial inability to pay ought not immunize a party from a
substantial Rule 11 or Rule 9011 sanction payable to the court
when, as here, an attorney (Clevenger) or a party (Robertson) has
knowingly advanced a frivolous argument with the intent to drive
up an opponent's attorney's fees and to delay resolution of the
case.  The Advisory Committee Note to the 1993 amendments to Rule
11 emphasizes this by urging consideration of:

> [w]hether the improper conduct was willful, or negligent;
> whether it was part of a pattern of activity, or an
> isolated event; whether it infected the entire pleading,
> or only one particular count or defense; whether the
> person has engaged in similar conduct in other
> litigation; [and] whether it was intended to injure[.]

Prior to the 1993 amendments to Rule 11, courts similarly
expressed the view that in imposing Rule 11 or Rule 9011

13

sanctions, a court should consider "the offending party's history, experience, and ability, the severity of the violation, **the degree to which malice or bad faith contributed to the violation**, the risk of chilling the type of litigation involved, and other factors as deemed appropriate in individual circumstances." *White*, 908 F.2d at 685 (citation omitted; emphasis added); *In re Kuntsler*, 914 F.2d 505, 524-25 (4th Cir. 1990). In other words, when Rule 11 or Rule 9011 misconduct entails bad faith, that weighs in favor of a heavier sanction than would be imposed otherwise.[7] It follows that in imposing Rule 11 or Rule 9011 sanctions when, as here, the violation entails bad faith, and an intent to injure an opponent, the court may impose a substantial monetary sanction, despite present inability of the offending party to pay, in order to protect the judicial process and deter future misconduct by the offending party or future litigants.

This is not a case like *Ameriquest Mortg. Co. v. Nosek (In*

---

[7] As observed by Arthur R. Miller and Mary Kay Kane in 5A Wright & Miller Fed. Prac. & Proc. Civ. § 1336.3 (3d ed. updated Apr. 2012):

> On occasion, [in cases decided prior to the 1993 amendments of the rule] Rule 11 sanctions awarding attorney's fees and costs generated by frivolous litigation proved to be substantial in size. . . . Obviously, the more egregious the conduct, the more likely that the sanction would be substantial. That common sense principle should continue to be relevant under the present rule.

*re Nosek)*, 609 F.3d 6 (1st Cir. 2010), in which there was no bad
faith.  There, the court of appeals found that the bankruptcy
court's sanction of $250,000 payable to the court was excessive
for a mortgage servicer having represented that it was the holder
of the mortgage note.  The court of appeals reduced the sanction
to $5,000 because the claim at issue was not a deliberate
falsehood or intended in any way to mislead the court or debtor
or achieve anything for the mortgage servicer (as it arguably
could have sued "as if" it were the holder), and the debtor was
not prejudiced.  Here, the finding of bad faith warrants
imposition of a substantial sanction.

As suggested by the Advisory Committe Note, one factor to
consider is the offending party's history, experience, and
ability.  Both Robertson and Clevenger appear to be well-trained
attorneys and have not shown that they lacked sufficient
experience or ability to appreciate that they were advancing a
frivolous argument.  They clearly knew that the funds that W.A.R.
LLP lent to Robertson had become Robertson's funds and were no
longer owned by W.A.R. LLP.

Another factor mentioned by the Advisory Committee Note that
weighs in favor of a substantial sanction is that Robertson's and
Clevenger's conduct was part of a pattern of activity, not an
isolated event, and that they engaged in similar conduct in other
litigation.  Robertson and Clevenger have inappropriately argued

15

to this and other courts that, notwithstanding prior rulings of
the district court and the bankruptcy court to the contrary, the
automatic stay barred Cartinhour from proceeding against
Robertson in the district court. *See Mem. Dec.* at 35-38, and 54
n.23. Their repeated invocation of the frivolous argument that
the automatic stay applied, even after the bankruptcy court had
not only held that the automatic stay did not apply but had
lifted it as a precautionary matter, was abusive and designed
only to drive up Cartinhour's litigation expenses. This is
strong evidence that they acted in bad faith, with an intent to
cause Cartinhour injury by driving up his attorney's fees, in
their continuing to claim that W.A.R. LLP owned the funds lent to
Robertson (which was the premise for contending that the
automatic stay applied to the funds).

As to another factor mentioned by the Advisory Committee
Note, Robertson's and Clevenger's repeated drumbeat that the
funds were owned by W.A.R. LLP infected the entirety of their
effort to drive up Cartinhour's attorney's fees by opposing the
closing of the case.

As suggested by the Advisory Committee Note, the court may
also consider what effect the misconduct had on the litigation
process in time or expense. What should have been a streamlined
bankruptcy case, closed promptly after the trustee filed his
report of no distribution, became instead a new round of

litigation of issues already adjudicated.  Robertson's and
Clevenger's misconduct imposed a substantial burden on the court
system in terms of expenditure of time, imposed substantial
expense on Cartinhour in the form of attorney's fees, and
lengthened the time to dispose of this case.

The final factor (regarding ability to pay) warrants making
a partial reduction in the sanction amount.  Clevenger submitted
copies of his 2009 and 2010 income tax returns for the court to
examine, and they reflect a modest income as an attorney.  He is
not earning the level of income more typical of attorneys
handling corporate bankruptcy cases in this court, and I accept
his representation that he faces an uninsured need for medical
surgery.  Based on that, I will reduce the sanction by 50% as the
sanction ought to take into account the attorney's level of
practice.  I have also become aware that the district court and
the court of appeals have made substantial awards of attorney's
fees against Clevenger and in favor of Cartinhour.  Nevertheless,
Clevenger failed to submit information regarding his assets, or
other information regarding his ability to pay.  At the hearing
of July 11, 2012, he indicated that there is some information
that cuts against him regarding ability to pay.  Moreover, he may
earn income that is not readily subject to garnishment by
Cartinhour, and with which he could pay the $5,000 sanction.  The
bottom line is that the judgments in favor of Cartinhour may make

payment of a $5,000 sanction a strain, but that does not amount
to an inability to pay.  The court will take the potential strain
into account by giving Clevenger twelve months to pay the
sanction.  If the $5,000 is not paid by then, the court will
require Clevenger to make a submission showing that he has made a
sincere effort towards paying the $5,000, according to his
ability, such that the court ought not conduct a hearing at that
juncture to consider holding him in civil contempt.  Unless the
court's order is stayed pending appeal, Clevenger is obligated to
make a sincere effort to pay the $5,000, and a failure to make
that sincere effort will subject him to civil contempt sanctions.

In the case of Robertson, when I issued my *Memorandum
Decision* imposing the $10,000 sanction, I was well aware that
Robertson already was the subject of a monetary judgment
exceeding $7 million issued against him by the district court in
favor of Cartinhour, and I was well aware that there was a
possibility that Robertson (like many individuals subject to a $7
million judgment) might not be able to pay that judgment, the
$10,000 Rule 9011 sanction, and an award pursuant to the court's
inherent power of attorney's fees to Cartinhour for Robertson's
preparing and filing papers for Ray Connolly.  Yet, I felt that a
$10,000 Rule 9011 sanction was appropriate.

Given Robertson's present lack of any meaningful assets or
meaningful current income, I will reduce the sanction to $5,000.

18

Because of the size of the district court judgment, there is a likelihood that Robertson will be unable to pay the district court judgment, the monetary judgment for sanctions in favor of Cartinhour, and a $5,000 Rule 9011 sanction. Nevertheless, there is a substantial possibility that Robertson will be able to earn income in the future that would enable him to make a meaningful payment.[8] Robertson, who was 44 years old as of the hearing on July 11, 2012, is a graduate of Stanford Law School, one of the nation's preeminent law schools. Robertson also has an MBA from Yale University. His filings in this case regarding sanctions issues demonstrate that he has excellent writing and research skills. In other words, he has a high likelihood of being able to have substantial earnings in the future, as a lawyer or otherwise.

Even though there is little likelihood that he will actually earn enough in the future to pay in full the district court's monetary judgment against him, Cartinhour's fees and costs occasioned by his misconduct in filing papers for Connolly in this court, and the $5,000 sanction, that does not alter the propriety imposing the $5,000 sanction. A litigant ought not be allowed to use his insolvency to immunize himself from an award

---

[8] Robertson currently is able to look to family members to pay his expenses, and he has not disclosed the extent to which he might in the future receive an inheritance, but I need not rely on any potential inheritance in ruling against Robertson on the effect of his current inability to pay.

of sanctions for intentionally causing his opponent to run up additional fees by knowingly filing meritless papers.  To give Robertson a free pass (based on his current insolvency) to engage in such litigation abuse without fear of the imposition of a Rule 9011 sanction would frustrate the deterrent purpose of the court's sanctions power.  Moreover, Robertson's financial circumstances may change (for example, via earning income that is not readily subject to garnishment) such that he will be able to pay the $5,000 despite the judgments in favor of Cartinhour.  Nevertheless, as in the case of Clevenger, and in light of Robertson's current financial straits, I will give Robertson twelve months to pay the sanction.  If the $5,000 is not paid by then, the court will require Robertson to make a submission showing that he has made a sincere effort towards paying the $5,000 such that the court ought not at that juncture conduct a hearing to consider holding him in civil contempt.  Unless the court's order is stayed pending appeal, Robertson is obligated to make a sincere effort to pay the $5,000, and a failure to make that sincere effort will subject him to civil contempt sanctions.

The $5,000 sanctions against Robertson and Clevenger, in contrast to the monetary judgments against them in favor of Cartinhour, *will* be enforceable by the court's civil contempt powers.  Although inability to pay can be raised as a defense to civil contempt, Robertson and Clevenger will have an incentive to

make an effort to pay the $5,000 in order to avoid the
possibility of being held in civil contempt, and their inability
to pay may not last forever.  If Robertson or Clevenger proves
unable to pay the $5,000 sanction, suggesting that future efforts
to enforce payment via the court's civil contempt powers is
insufficiently promising to warrant further contempt hearings,
the court will treat the sanction as a monetary judgment to be
collected via the usual procedures applicable to court fees or
other amounts owed to the United States, for example via setoff
against any income tax overpayments.  The sanction will still
serve a deterrent purpose as to these individuals because the
debt can be collected at a later date should their financial
circumstances improve.

     In addition, there is little danger that the $5,000 sanction
will prevent Robertson or Clevenger from earning a living.
Collection of Cartinhour's awards against them will be subject to
whatever limitations regarding execution process apply under
federal law or state law.  In the case of Robertson (California
being Robertson's state of residence), *see, e.g.,* 15 U.S.C.
§ 1673 (setting limits on amounts that may be collected via a
levy on wages); Cal. Civ. Proc. Code §§ 703.010, *et seq.*
(exemption provisions regarding enforcement of a monetary
judgment) and §§ 706.010, *et seq.* (Wage Garnishment Law)
(including § 706.051(b), which permits exemption of wages, beyond

the amounts protected from garnishment by 15 U.S.C. § 1673,[9] for
any additional portion of the judgment debtor's earnings that is
necessary for the support of the judgment debtor).

The sanctions are not being used "as a means of driving
[Robertson or Clevenger] out of practice." *White*, 908 F.2d at
684.   In this regard, one of the implicit concerns in the Rule 11
case law, in looking to ability to pay as an important factor, is
that a court not utilize its Rule 11 sanctions power in a
vindictive fashion that is punitive beyond the extent necessary
to achieve Rule 11's deterrence purpose.   I have no desire to
drive Robertson or Clevenger into financial ruin or to drive them
from the ability to engage in making a living, and my ruling is
based on the need to deter future misconduct of the type in which
they engaged.

*In re Letourneau*, 422 B.R. 132 (Bankr. N.D. Ill. 2010), is
closely analogous to this case with respect to the court's
balancing of the ability to pay and other factors when deciding
on the appropriate sanction.   There, the debtor, Letourneau,
filed an involuntary petition against himself bearing the
purported signatures of three creditors who had not signed the
petition.   Although Letourneau had not prepared the petition, the

---

[9]   Cal. Civ. Proc. Code § 706.050 makes the amount of wages
protected by 15 U.S.C. § 1673 an exemption amount, and
§ 706.051(b) is an additional exemption amount above and beyond
what is provided for in § 706.050.

court found that Letourneau knew or should have known that the
contents of the petition were false.  422 B.R. at 141 n.7.  The
improper petition caused an automatic stay to arise that stalled
pending foreclosure efforts against Letourneau's home.  The court
found that:

- Letourneau had already been put to the expense of
  hiring an attorney to represent him, and the public
  embarrassment of being found to have abused the
  bankruptcy system (422 B.R at 141);

- "[t]he monetary equivalent of a slap on the wrist would
  be enough to prevent recidivism" (citations omitted)
  (*id.*); and

- Letourneau's inability to pay weighed in favor of a
  light monetary sanction (422 B.R. at 142).

The court then stated:

> A heavier sanction must be imposed, however, to deter
> "comparable conduct by others similarly situated."  Fed.
> R. Bankr.P. 9011(c)(2).  The maneuver Letourneau employed
> here is a serious abuse of the bankruptcy system. . . .
>     Only a fairly sophisticated person acquainted with
> bankruptcy law could come up with a scheme like this.  It
> has to be nipped in the bud.  A sanction larger than
> would be necessary in the usual civil case is therefore
> appropriate because, as this case amply demonstrates,
> "'bankruptcy proceedings are subject to a degree of
> manipulation and abuse not typical of civil litigation.'"
> *Collins*, 250 B.R. at 660 [*In re Collins*, 250 B.R. 645,
> 659, 660 (Bankr. N.D. Ill. 2000)] (quoting *In re Marsch*,
> 36 F.3d 825, 830 (9th Cir. 1994)).

422 B.R. at 142.  Although fraud is not at stake in this case, as
the *Memorandum Decision* of May 4, 2012, makes clear, Robertson's

and Clevenger's misconduct rose to a high level of egregiousness as in the case of the misconduct in *In re Letourneau*, and perhaps was more egregious because Robertson and Clevenger are highly sophisticated, trained in the law, and knew quite well that they were advancing a frivolous argument for the purpose of injuring Cartinhour. As in *In re Letourneau*, it is appropriate to impose a substantial sanction against them even if they prove unable to pay the sanction. Given the egregiousness of what Robertson and Clevenger did, in repeatedly advancing their frivolous argument in a deliberate effort to cause Cartinhour additional expense, a substantial monetary sanction is warranted to deter such future misconduct by them and also by others. Only such an award sends a clear message that if a litigant engages in such egregious misconduct, with the intent to run up his opponent's attorney's fees, the sanction will hurt. Here, the various factors "weigh in favor of a sanction that is not just a slap on the wrist but carries instead some lasting sting." *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 248 (1st Cir. 2010).

V

Orders follow.

[Signed and dated above.]

Copies to: All recipients of e-notification; Wade A. Robertson.

24