**The document below is hereby signed.**

**Dated: September 25, 2012.**



**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

In re                          )
                               )
W.A.R. LLP,                    )      Case No. 11-00044
                               )      (Chapter 7)
              Debtor.          )      Not for publication in
                               )      West's Bankruptcy Reporter.

MEMORANDUM DECISION FIXING
AMOUNT OF FEES TO BE AWARDED WILLIAM C. CARTINHOUR,
<u>JR. ON HIS MOTION FOR SANCTIONS AGAINST WADE A. ROBERTSON</u>

On May 4, 2012, this court ruled that, pursuant to the

court's inherent power, William C. Cartinhour, Jr. was entitled

to recover from Wade A. Robertson his attorney's fees and costs

incurred by reason of Robertson's role in the preparation and

filing of papers on behalf of Ray Connolly.  Robertson then filed

his *First Motion Pursuant to Federal Rules of Bankruptcy*

*Procedure 7052, 9023, & 9024 to Amend Findings, and/or Amend*

*Judgment, and/or for New Hearing, and/or for Relief From Judgment*

*of the Court's May 4, 2012 Memorandum and Orders*.  That motion

will be overruled, and a judgment will be entered awarding

Cartinhour $21,901.

I

Robertson's motion rests on inability to pay sanctions, but he failed to raise the defense of inability to pay when he initially opposed Cartinhour's motion for sanctions, and he could be viewed as having waived the argument. *See White v. Gen. Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990) ("Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status."); *Multiservice Joint Venture, LLC v. United States*, 374 F. App'x 963, 967 (Fed. Cir. 2010) ("The [trial] court found that she waived this argument when she failed to raise it as a mitigating factor in response to the government's application for attorney fees and costs. We agree."). Even if Robertson has not waived the defense, I nevertheless conclude that Cartinhour is entitled to recover all of his damages as a sanction.

II

A preliminary issue is whether ability to pay is a factor the court must take into account in deciding the amount of attorney's fees to impose as a sanction pursuant to the court's inherent power. The issue is one on which the courts are split.

A

The issue is not governed by decisions addressing the issue

2

under Fed. R. Civ. P. 11 or its bankruptcy analog, Fed. R. Bankr.
P. 9011.  Courts hold that the purpose of sanctions under either
of those rules is not compensation, but deterrence.  *See Brubaker
v. City of Richmond*, 943 F.2d 1363, 1370 n.7 (4th Cir. 1991)
("The primary purpose of Rule 11 is not compensation of the
offended party, but rather deterrence of future litigation
abuse." (citing *In re Kuntsler*, 914 F.2d 505, 522 (4th Cir.
1990); *White*, 908 F.2d at 684 ("The appropriate sanction should
be the least severe sanction adequate to deter and punish the
plaintiff." (citations omitted)).  Accordingly, in considering an
imposition of attorney's fees under Rule 11 or Rule 9011, one
factor to consider is the sanctioned party's ability to pay.
*White*, 908 F.2d at 685; *Hilton Hotels Corp. v. Banov*, 899 F.2d
40, 46 (D.C. Cir. 1990).  Nevertheless, inability to pay does not
prevent a full award of the opponent's attorney's fees if
necessary to serve the rule's deterrent purpose.  *Christian v.
Mattel, Inc.*, 286 F.3d 1118, 1125 n.4 (9th Cir. 2002) ( "The
Advisory Committee's notes concerning the [1993] amendments [to
Fed. R. Civ. P. 11] indicate that an attorney's financial
wherewithal is only one of several factors that a district court
may consider in deciding the amount of sanctions .... Nothing in
Rule 11 mandates a specific weighing of this factor, however.").

B

In contrast, Cartinhour is seeking sanctions pursuant to the

3

court's inherent power.   Robertson's motion asserts:

> when sanctions are to be imposed under a court's
> inherent powers, the sanctioned party's ability to pay
> is a factor to be considered.   *See Martin v. Automobili
> Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1336-1337
> (11th Cir. 2002) (reversing award of sanctions imposed
> under the court's inherent authority because although
> the court considered the combined finances of the
> parties, the court failed to consider whether each
> party had the ability to pay the full amount of the
> sanction) (citations omitted).

Not all courts agree that a sanctioned party's inability to pay

is always a factor to take into account in imposing a monetary

sanction pursuant to the court's inherent power.   *See Telechron,

Inc. v. Intergraph Corp.*, 91 F.3d 144 (6th Cir. 1996) ("We have

not heretofore required an inquiry into a party's ability to pay

when the court exercises its inherent powers and on the facts of

this case, we decline to do so.").

As an exception to the American Rule, a court, pursuant to

its inherent power, may shift to a losing party the prevailing

party's attorney's fees attributable to the losing party having

acted in bad faith, vexatiously, wantonly, or for oppressive

reasons.   *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421

U.S. 240, 258-59 (1975).   Thus, in contrast to Rule 11 or Rule

9011, the imposition of sanctions pursuant to a court's inherent

power *is* a fee shifting power.   In *Chambers v. NASCO, Inc.*, 501

U.S. 32 (1991), the Court considered the boundaries of a federal

court's awarding attorney's fees pursuant to its inherent power:

> [A] court may assess attorney's fees when a party has

4

> "acted in bad faith, vexatiously, wantonly, or for
> oppressive reasons." ... The imposition of sanctions in
> this instance transcends a court's equitable power
> concerning relations between the parties and reaches a
> court's inherent power to police itself, thus serving the
> **dual purpose** of "vindicat[ing] judicial authority without
> resort to the more drastic sanctions available for
> contempt of court and mak[ing] the prevailing party whole
> for expenses caused by his opponent's obstinacy."

*Id.* at 45-46 (internal citations and quotations omitted)

(emphasis added).

C

Does the dual purpose of vindicating judicial authority and

compensating for damages caused by a party's bad faith conduct

make inability to pay an inappropriate factor to consider in

imposing sanctions under that power?  To answer that question, it

is useful to examine the issue of whether that factor must be

considered (or must not be considered) when fees are awarded

under 28 U.S.C. § 1927.[1]  The imposition of attorney's fees

pursuant to the court's inherent power is akin to the imposition

of attorney's fees pursuant to 28 U.S.C. § 1927 against an

attorney who has vexatiously multiplied proceedings, at least

---

[1]  Section 1927 provides:

Any attorney or other person admitted to conduct cases in
any court of the United States or any Territory thereof
who so multiplies the proceedings in any case
unreasonably and vexatiously may be required by the court
to satisfy personally the excess costs, expenses, and
attorneys' fees reasonably incurred because of such
conduct.

when § 1927 is interpreted as requiring a finding of bad faith.[2] *See Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986) ("the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.")

Some courts hold that ability to pay is *not* a factor to take into account in making an award under § 1927. *See Shales v. Gen. Chauffeurs, Sales Drivers and Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009) ("a lawyer's ability to pay does not affect the appropriate award for a violation of § 1927," because "[a] violation of § 1927 is a form of intentional tort," and therefore, as with other intentional torts, "[d]amages depend on the victim's loss, not the wrongdoer's resources."); *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th Cir. 2008) ("the text of § 1927, unlike that of Rule 11, indicates a purpose to compensate victims of abusive litigation practices, not to deter and punish offenders."). In *Haynes v. City and County of*

---

[2] Despite an apparent holding in *Reliance Ins. Co. v. Sweeney Corp., Md.*, 792 F.2d 1137 (D.C. Cir. 1986), that recklessness suffices, *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992), expressed the view that the law in the D.C. Circuit is unsettled as to whether a court must find subjective bad faith or merely recklessness to impose sanctions under § 1927.

*San Francisco*, --- F.3d ----, 2012 WL 2989092 (9th Cir. July 23,
2012), however, the court of appeals rejected *Shales* and
*Hamilton,* ruling that the use of the word "may" rather than
"shall" or "must" in § 1927 reflects that § 1927 awards are
discretionary such that the court may permissibly take ability to
pay into account, although courts are not required to limit an
award to the amount that the sanctioned attorney is able to pay.

D

A court's inherent power "must be exercised with restraint
and discretion." *Chambers*, 501 U.S. at 44.  Based on that, I will
assume that ability to pay is a factor that, in the court's
discretion, may be taken into account in imposing sanctions
pursuant to the court's inherent power, but given the dual
purpose of sanctions imposed under the court's inherent power, it
would require a unique set of circumstances for a court to
justifiably award less than the full amount of fees against an
offender.  One example is this: when multiple parties or
attorneys have engaged in bad faith conduct, it may be
appropriate to determine the financial ability of each of those
individuals in deciding the amount of the opponent's fees to be
recovered from each of them in order to make the opponent whole.
*See Martin*, 307 F.3d at 1337.  When no such circumstances are
present, as was the case in *Robertson v. Cartinhour*, 2012 WL
3245424 (D.D.C. Aug. 10, 2012), I agree with Judge Huvelle that

7

inability to pay "is irrelevant to a sanction award under
§ 1927," *id.* at *6, or, as here, pursuant to the court's inherent
powers.  In any event, when a party has, as here, intentionally
and maliciously caused a strawman to file papers, knowing that
the papers were without merit, in an effort to run up his
opponent's attorney's fees, it is not a just exercise of the
court's discretion to allow the party, based on his inability to
pay (an inability of which he was well aware when he engaged in
his bad faith misconduct), to escape having imposed against him
an award of the fees his bad faith conduct caused his opponent.

     In the case of § 1927 sanctions, consideration of an
individual's ability to pay does not require that the award be
limited to the amount that the sanctioned individual is able to
pay.  *Haynes,* 2012 WL 2989092.  Even when fees are awarded
pursuant to Rule 11 or Rule 9011, a reduced fee award based on
inability to pay is only appropriate if the court determines that
a reduced fee award is sufficient to deter future violations.
*Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d
1224, 1230 (6th Cir. 1989).  When fees are imposed as a sanction
pursuant to the court's inherent power, consideration of
inability to pay similarly ought not mandate limiting the fees
awarded to those the offender is able to pay when other
considerations weigh in favor of awarding the full amount of the
opponent's fees arising from the bad faith conduct.  I

8

acknowledge that *Martin* arguably expresses a contrary view.  *See Martin*, 307 F.3d at 1338 n.5 ("We also are not limiting the district court's discretion to impose joint and several liability for the sanctions upon the parties.  **We only say that a party may not be held jointly liable for an amount of sanctions the party does not have the ability to pay.**" (Emphasis added.)).[3]  *Martin* reached this view by stating:

> Sanction orders must not involve amounts that are so large that they seem to fly in the face of common sense, given the financial circumstances of the party being sanctioned.  What cannot be done must not be ordered to be done.  *Miccosukee Tribe v. South Florida Water Management District*, 280 F.3d 1364, 1370 (11th Cir. 2002) (discussing injunctions).  And, sanctions must never be hollow gestures; their bite must be real.  For the bite to be real, it has to be a sum that the person might actually pay.  A sanction which a party clearly cannot pay does not vindicate the court's authority because it neither punishes nor deters.  *Cf. Malautea*, 987 F.2d at 1545 [*Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993)] (concluding that sanctions imposed under court's inherent power "justly punished" the offending parties and would hopefully deter others from engaging in similar conduct).

*Martin*, 307 F.3d at 1337.  *Martin* failed to acknowledge that there may be considerations that warrant taking a different view, including, for example, that:

---

[3]  *Martin* expressed a concern that joint and several liability for all of the opponents' fees ought not be imposed against all offending parties if only one of them had a financial ability to pay the fees in full.  *See Martin*, 307 F.3d at 1337.  Perhaps *Martin* can be distinguished on the basis that it did not deal with a case in which there was only one offending party to sanction to make the opposing party whole.

- it may be necessary to make an award beyond a party's
  ability to pay in order to send a message that deters
  similar misconduct by others in future cases;

- making a full award of attorney's fees against a party
  who in bad faith files meritless papers with the
  specific purpose of driving up his opponent's
  attorney's fees can be just punishment even if the
  party is unable to pay the full amount of fees; and

- beyond the need to vindicate the court's authority, an
  award pursuant to the court's inherent powers also
  serves a purpose of compensating the opposing party,
  and sometimes it is just to allow the opposing party to
  pursue collection of a judgment for the full amount of
  fees based on the offending party's financial
  circumstances as they change over time.

Accordingly, I respectfully disagree with the view in *Martin* that
an award pursuant to the court's inherent authority must be
limited to the amount the offender is able to pay.

### III

In exercising discretion to fashion an appropriate sanction,
I will take into account Robertson's financial condition as well
as other pertinent considerations.  Although decisions under Rule
11 or Rule 9011 are not squarely on point in this case, it is
useful to look to the factors courts consider in imposing

10

sanctions under those rules.  In doing so, it is important to
bear in mind that, in contrast to those rules, sanctions imposed
pursuant to the court's inherent power serve the dual purpose of
vindicating the court's authority and compensating the opponent
harmed by the bad faith misconduct.  In deciding what level of
monetary sanctions to impose in order to serve the deterrent
purpose of Rule 11 or Rule 9011, it is appropriate to consider
(1) the reasonableness of the injured party's attorney's fees and
costs; (2) the minimum amount of sanctions necessary to deter;
(3) the offending party's ability to pay; and (4) other factors
related to the severity of the violation.  *White*, 908 F.2d at
684-85.

There is a feature that distinguishes this and other
inherent power cases from many Rule 11 or Rule 9011 cases.  In
contrast to imposition of sanctions under Rule 11 or Rule 9011,
which does not require a finding of bad faith, the imposition of
sanctions here under the court's inherent power always requires a
finding of bad faith.  In imposing Rule 11 or Rule 9011
sanctions, a court, in addressing the severity of the violation,
should consider "the offending party's history, experience, and
ability, the severity of the violation, **the degree to which
malice or bad faith contributed to the violation**, the risk of
chilling the type of litigation involved, and other factors as
deemed appropriate in individual circumstances."  *White*, 908 F.2d

11

at 685 (citation omitted; emphasis added); *In re Kuntsler*, 914
F.2d at 524.  In other words, when Rule 11 or Rule 9011
misconduct entails bad faith, that weighs in favor of fully
compensating the opposing party in order to serve the rule's
deterrent purposes.[4]  It follows that in awarding fees pursuant
to the court's inherent power for bad faith misconduct, the court
may fully compensate the opposing party, despite present
inability of the offending party to pay, in order to protect the
judicial process and deter future misconduct by the offending
party or future litigants.

Applying the Rule 11 factors here, I conclude that a full
award of Cartinhour's fees is warranted.  As to the first factor,
Robertson has not challenged the reasonableness of the fees and
costs sought by Cartinhour, other than making a legal argument
that Cartinhour had a duty to mitigate his damages.  In his
opening statement at the hearing of July 11, 2012, he elaborated
that he thought that Cartinhour had failed to mitigate his

---

[4]  As observed by Arthur R. Miller and Mary Kay Kane in 5A
Wright & Miller Fed. Prac. & Proc. Civ. § 1336.3 (3d ed. updated
Apr. 2012):

> On occasion, [in cases decided prior to the 1993
> amendments of the rule] Rule 11 sanctions awarding
> attorney's fees and costs generated by frivolous
> litigation proved to be substantial in size. . . .
> Obviously, the more egregious the conduct, the more
> likely that the sanction would be substantial. That
> common sense principle should continue to be relevant
> under the present rule.

damages because Cartinhour failed to bring to this court's attention, earlier than he did, that Ray Connolly was barred from pursuing his claim in this case by reason of Connolly's having failed to schedule that claim as an asset in Connolly's own bankruptcy case.  Robertson elected, however, not to present evidence in that regard, and the record does not in any way suggest that Cartinhour or his attorneys were aware of Connolly's bankruptcy case before they had opposed his various filings in this case.[5]

The second factor (the minimum amount necessary to serve the goal of deterrence) and the fourth factor (the severity of Robertson's misconduct) also weigh in Cartinhour's favor.  In the *Memorandum Decision* of May 3, 2012, entered on May 4, 2012, the court concluded, based on clear and convincing evidence, that Robertson had engaged in bad faith,[6] and stated:

---

[5]  In his final remarks at the hearing of July 11, 2012, in apparent recognition that the meter was still running against him for the attorney's fees that Cartinhour was incurring in the pursuit of sanctions, Robertson appeared to indicate that he would not be pressing the mitigation of damages point, stating "I'm not going to file a motion regarding the duty to mitigate."

[6]  *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995), requires a finding of bad faith based on clear and convincing evidence before the court may impose sanctions pursuant to its inherent power.  *See also Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011).  All of my findings of bad faith in my *Memorandum Decision* of May 3, 2012, rested on an application of that standard of clear and convincing evidence. Applying that same standard, nothing that Robertson has presented since then alters those findings.

13

> Rarely has the court seen such an unrelenting pursuit of
> a patently frivolous argument undertaken with such
> complete indifference to the merits.  And never before
> has the court witnessed such a bizarrely unethical
> strategy as that which Robertson employed through the
> ghostwriting of Connolly's papers, a strategy that caused
> an entirely unnecessary and exponential growth of these
> proceedings, and which served no purpose other than to
> needlessly delay the closing of this case and put
> Cartinhour to the burden and expense of defending against
> another round of meritless claims regarding the impact of
> the automatic stay on Cartinhour's right to recover
> against Robertson.  The court finds that there is clear
> and convincing evidence that through the ghostwriting of
> Connolly's papers, Robertson has, in bad faith, advanced
> legally frivolous arguments and vexatiously multiplied
> proceedings as part of a campaign to frustrate
> Cartinhour's ability to gain access to the registry funds
> and to put him to the burden of unnecessary litigation.

*Mem. Dec.* at 76.  Given the egregiousness of what Robertson did,

in a deliberate effort to cause Cartinhour additional expense,

the full amount of Cartinhour's fees arising from Robertson's

misconduct relating to the Connolly filings is the minimum amount

needed to deter such future misconduct by Robertson and also by

others.  Such an award sends a clear deterrent message to future

litigants.  When, as here, a litigant deliberately advances

knowingly frivolous arguments in an effort to drive up his

opponent's attorney's fees, deterrence is served by awarding the

full amount of fees occasioned by the misconduct.  *See Brandt v.*

*Schal Assocs., Inc.*, 960 F.2d 640, 646 (7th Cir. 1992) ("If

compensation was not a recognizable basis for Rule 11 awards,

aggrieved litigants would have little incentive to pursue

sanctions thus diminishing the important deterrent effect of Rule

11."). Accordingly, awarding an opponent's attorney's fees arising from a litigant's egregious purposeful misconduct in litigation "is not an unreasonable method to deter spurious suits and wasteful trial tactics." *Id.* at 647 (applying Fed. R. Civ. P. 11). *See also Divane v. Krull Electric Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999) (same conclusion after 1993 amendments to Rule 11); *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 400 (6th Cir. 2009) ("[A]lthough it is clear that Rule 11 is not intended to be a compensatory mechanism in the first instance, it is equally clear that effective deterrence sometimes requires compensating the victim for attorney fees arising from abusive litigation."). This applies even more clearly to sanctions imposed pursuant to the court's inherent authority based on bad faith. *See Chambers*, 501 U.S. at 57 ("It was within the court's discretion to vindicate itself and compensate NASCO by requiring Chambers to pay for all attorneys' fees."). Here, the level of egregiousness at issue clearly necessitates a full award.

The third factor (regarding ability to pay) fails to warrant awarding Cartinhour less than the full amount of his attorney's fees and costs. When I issued my decision authorizing Cartinhour to recover his attorney's fees and costs as a sanction, I was well aware that Robertson already was the subject of a monetary judgment exceeding $7 million issued against him by the district court in favor of Cartinhour, and I was well aware that there was

a possibility that Robertson (like almost anyone else) might not be able to pay both that judgment and a full award of Cartinhour's attorney's fees occasioned by the papers Robertson filed on behalf of Connolly.  Yet, I felt that a full award of attorney's fees was warranted.

Given Robertson's present lack of any meaningful assets or income, and the size of the district court judgment, there is a likelihood that Robertson will be unable to pay the district court judgment and a sanctions award by this court. Nevertheless, there is a substantial possibility that Robertson will be able to earn income in the future that would enable him to make a meaningful payment.[7]  Robertson, who was 44 years old as of the hearing on July 11, 2012, is a graduate of Stanford Law School, one of the nation's preeminent law schools.  Robertson also has an MBA from Yale University.  His filings in this case regarding sanctions issues demonstrate that he has excellent writing and research skills.  In other words, he has a high likelihood of being able to have substantial earnings in the future, as a lawyer or otherwise.

Even though there is little likelihood that he will actually earn enough in the future to pay in full both the district

---

[7]  Robertson currently is able to look to family members to pay his expenses, and he has not disclosed the extent to which he might in the future receive an inheritance, but I need not rely on any potential inheritance in ruling against Robertson on the effect of his current inability to pay.

16

court's monetary judgment against him and Cartinhour's fees and
costs occasioned by his misconduct in filing papers for Connolly
in this court, that does not alter the propriety of awarding
Cartinhour the full amount of his fees and costs arising from
that misconduct.  A litigant ought not be allowed to use his
insolvency to immunize himself from an award of sanctions for
intentionally causing his opponent to run up additional fees by
filing meritless papers.  Robertson prepared and filed papers on
behalf of Connolly that he knew to be frivolous in a deliberate
effort to cause added expense for Cartinhour.  He did so knowing
full well that he did not have the current ability to reimburse
Cartinhour for the fees that Cartinhour was incurring.  To give
Robertson a free pass (based on his current insolvency) to engage
in such litigation abuse without fear of Cartinhour's damages
being imposed against him as a sanction would frustrate the
deterrent purpose of the court's sanctions power.

This is not a case in which the award of fees to Cartinhour
carries with it a risk of further adverse consequences to
Robertson if he does not pay the award, such that the magnitude
of the award arguably ought to be limited by Robertson's ability
to pay.  The award is not being made in a civil action or
adversary proceeding in which Robertson's right to pursue some
claim of his own is being conditioned on his paying the sanctions
award.  Nor will the award be enforceable by the court's contempt

17

powers.  At the hearing on Robertson's motion on July 11, 2012,

Robertson expressed a concern that a sanctions award in favor of

Cartinhour could result in Robertson being held in contempt of

court.  Cartinhour, through his counsel, agreed that any award in

favor of Cartinhour could be a monetary judgment for which a

failure to pay would not be treated as a contempt.[8]

In addition, there is little danger that a full award of

fees and costs will prevent Robertson from earning a living.

Collection of any judgment awarded against him will be subject to

whatever limitations regarding judgment execution process apply

under federal law or state law (California being Robertson's

state of residence).  *See, e.g.*, 15 U.S.C. § 1673 (setting limits

on amounts that may be collected via a levy on wages); Cal. Civ.

Proc. Code §§ 703.010, *et seq.* (exemption provisions regarding

enforcement of a monetary judgment) and §§ 706.010, *et seq.* (Wage

Garnishment Law) (including § 706.051(b), which permits exemption

of wages, beyond the amounts protected from garnishment by 15

U.S.C. § 1673,[9] for any additional portion of the judgment

debtor's earnings that is necessary for the support of the

---

[8]  *See In re Estate of Bonham*, 817 A.2d 192, 195-96 (D.C.
2003) (use of contempt to collect counsel fee award not
permitted).  *See also In re Ali*, 2011 WL 1655578 (Bankr. D.D.C.
Apr. 29, 2011).

[9]  Cal. Civ. Proc. Code § 706.050 makes the amount of wages
protected by 15 U.S.C. § 1673 an exemption amount, and
§ 706.051(b) is an additional exemption amount above and beyond
what is provided for in § 706.050.

18

judgment debtor).

The award to Cartinhour is not being used "as a means of driving [Robertson] out of practice." *White*, 908 F.2d at 684. One of the implicit concerns in the Rule 11 case law, in looking to ability to pay as an important factor, is that a court not utilize its Rule 11 sanctions power in a vindictive fashion that is punitive beyond the extent necessary to achieve Rule 11's deterrence purpose. I have no desire to drive Robertson into financial ruin or to drive him from the ability to engage in making a living, and my ruling is based on the need to deter future misconduct of the type in which Robertson engaged in preparing and filing papers for Connolly, with the incidental benefit of awarding Cartinhour compensation for the damage he suffered as a result.

Finally, Cartinhour has plainly been damaged by Robertson's misconduct, and an award of less than the full amount of those damages would place Cartinhour on less than an equal footing with Robertson's other creditors, including Robertson's father who holds a substantial claim against Robertson for amounts lent to Robertson. Should Robertson eventually file a bankruptcy case or be the subject of an involuntary bankruptcy petition, it makes no sense that someone like Cartinhour, who Robertson intentionally and maliciously damaged by wrongful bad faith misconduct, would have been put in an inferior compensatory position for his

damages vis-à-vis Robertson's other creditors.  Moreover,
Robertson would obviously prefer that his father's potential
recovery from him be maximized as against Cartinhour's recovery
from him.  By awarding Cartinhour a full recovery, thereby going
against Robertson's presumed desire that the court's sanction
award be cast in a way that favors his father's interests as a
creditor, the award will more likely serve the goal of
deterrence.

Although it dealt with Rule 9011 sanctions instead of
sanctions imposed pursuant to the court's inherent power, and did
not entail any purpose of compensating an opposing party as the
sanction was payable to the court, *In re Letourneau*, 422 B.R. 132
(Bankr. N.D. Ill. 2010), is closely analogous to this case with
respect to the court's balancing of the ability to pay and other
factors when deciding on the appropriate sanction.  There, the
debtor, Letourneau, filed an involuntary petition against himself
bearing the purported signatures of three creditors who had not
signed the petition.  Although Letourneau had not prepared the
petition, the court found that Letourneau knew or should have
known that the contents of the petition were false.  422 B.R. at
141 n.7.  The improper petition caused an automatic stay to arise
that stalled pending foreclosure efforts against Letourneau's
home.  The court found that:

•   Letourneau had already been put to the expense of

hiring an attorney to represent him, and the public

embarrassment of being found to have abused the

bankruptcy system (422 B.R at 141);

- "[t]he monetary equivalent of a slap on the wrist would

  be enough to prevent recidivism" (citations omitted)

  (*id.*); and

- Letourneau's inability to pay weighed in favor of a

  light monetary sanction (422 B.R. at 142).

The court then stated:

> A heavier sanction must be imposed, however, to deter
> "comparable conduct by others similarly situated." Fed.
> R. Bankr.P. 9011(c)(2). The maneuver Letourneau employed
> here is a serious abuse of the bankruptcy system. . . .
>     Only a fairly sophisticated person acquainted with
> bankruptcy law could come up with a scheme like this. It
> has to be nipped in the bud. A sanction larger than
> would be necessary in the usual civil case is therefore
> appropriate because, as this case amply demonstrates,
> "'bankruptcy proceedings are subject to a degree of
> manipulation and abuse not typical of civil litigation.'"
> *Collins*, 250 B.R. at 660 [*In re Collins*, 250 B.R. 645,
> 659, 660 (Bankr. N.D. Ill. 2000)] (quoting *In re Marsch*,
> 36 F.3d 825, 830 (9th Cir. 1994)).

Although fraud is not at stake in this case, as the passage

quoted above from the *Memorandum Decision* of May 3, 2012, makes

clear, Robertson's misconduct rose to a high level of

egregiousness as in the case of the misconduct in *In re

Letourneau*, and perhaps was more egregious because Robertson is

highly sophisticated as a skillful attorney and knew quite well

that he was engaging in improper conduct. As in *In re

Letourneau*, it is appropriate to impose a substantial sanction

21

against Robertson even if he is unable to pay the sanction.

In conclusion, consideration of Robertson's inability to pay, and of the other relevant factors, mandates a finding that a full award of Cartinhour's fees is necessary to serve the deterrent purpose of imposing sanctions pursuant to the court's inherent power, and incidentally thereto, to serve the second purpose of compensating Cartinhour for his damages suffered by reason of Robertson's wrongful conduct.

IV

Cartinhour's attorney's affidavits (Dkt. Nos. 292, 363, and 368) establish that, prior to the hearing of July 11, 2012, Cartinhour had incurred $22,506.00 in fees by reason of Robertson's preparation of filings for Connolly.  As stated at the hearing, Cartinhour incurred an additional $395 in attorney's fees prosecuting his sanctions motion, bringing the total amount of fees to $22,901.  As this court previously ruled, that amount is subject to setoff of the $1,000 settlement payment recovered by William Cartinhour from Ray Connolly, and, accordingly, I will deny Robertson's motion insofar as it relates to Cartinhour's motion for sanctions, and issue a judgment in favor of Cartinhour against Robertson in the amount of $21,901.

[Signed and dated above.]

Copies to: All recipients of e-notification; Wade A. Robertson.